SIEDENTOP v. BUSE et al.

(Supreme Court, Appellate Division, First Department. November 12, 1897.)

1. INJURY TO EMPLOYE—DANGEROUS PREMISES.
   Plaintiff, a chambermaid in an hotel kept by defendants, was assigned to a room where she should sleep, in which the ceiling was cracked. She reported its condition to the defendants, and was assured that it was perfectly safe. Thereafter, in reliance on this assurance, she slept there, and was injured by a fall of the ceiling. *Held*, that the defendants were liable.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   The mere fact that a servant knows that there is a crack in the ceiling of a sleeping room assigned to her does not render her guilty of contributory negligence in sleeping there, especially if the employer has assured her that it is safe.

Appeal from trial term.

Action by Louisa Siedentop against Frederick Buse and others. From a judgment entered on a verdict and from an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

E. J. Myers, for appellants.

E. Van Schaick, for respondent.

VAN BRUNT, P. J. This action was brought to recover damages for personal injuries alleged to have been suffered by the plaintiff as the result of the defendants' negligence. The defendants, as co-partners, were engaged in business in the city of New York, and conducted the hotel known as the "Cooper Union Hotel." On the 11th of August, 1893, the plaintiff was engaged by one of the defendants as a chambermaid, and was assigned to a room where she should sleep. She saw the room on the 11th of August, but did not sleep there until nearly a week after that. After the first night that the plaintiff slept in the room she went to one of the defendants and told him that the room was not fit for sleeping in; that the ceiling was cracked; that it looked bad, and maybe some time it would come down. The defendant told her that it was not dangerous, and that she could sleep there very quietly. He further told her that the ceiling was all right, and would never come down. The plaintiff testified that there were several cracks in the ceiling, about three or four straight, and one a bended one,—a round one; that the straight crack ran through the whole ceiling and there were other cracks; that the crack that ran in the ceiling of the room was straight from the window to the door,—a long crack. On the 29th of August the plaintiff went to bed; about 4 or 5 o'clock in the morning a piece of ceiling fell upon her, and when

she recovered consciousness she found herself in a room on the floor below, at some distance from the room in which she was sleeping when she was injured. There were two single beds in the room, and another girl slept in one of the beds when the plaintiff first went there, but it was not long before she was sent away, and there was nobody else sleeping in the room when the plaintiff was hurt. Evidence was given by the plaintiff tending to show the extent of the injuries which she received.

The defendants denied having had any conversation with the plaintiff upon the subject of the ceiling, and denied any knowledge that the ceiling of the room was cracked. The defendants also examined as a witness a builder who testified that he went in and out of this room a few days before the accident happened, and did not see any cracks in the ceiling, and that when he went into the building to make repairs there were no other cracks in the wall than that which had fallen out. At that time he made tests for the purpose of seeing whether the other part of the plaster was loose there; that part of it was loose around it,—from six to eight inches, in some places ten inches. It was as if this piece had dropped out. The witness further stated that he could give no reason for the falling of this piece, but that it came from some shock,—some object striking it. There was some evidence that upon the morning when the ceiling fell there was a heavy storm raging.

It is urged that the plaintiff cannot recover for the injuries suffered, because she assumed, notwithstanding the master's assurance of safety, the risk by continuing to expose herself to danger beyond the time required for repairs to be made; and our attention is called to the case of Marsh. v. Chickering, 101 N. Y. 396; 5 N. E. 56. But we think that that case has no application to the facts disclosed by this record. The rule laid down in that case is that where an employé is using tools to which he is accustomed, and in regard to which he has perfect knowledge, he can hardly be said to have a claim against his employer for negligence, if, in using a utensil which he knows to be defective, he is accidentally injured. The court say:

"Under these circumstances, it does not rest with the servant to say that the master has superior knowledge, and has thereby imposed upon him. He fully comprehends that the instrument which he employs is not perfect, and if he is thereby injured it is by reason of his own fault or negligence. The fact that he notified the master of the defect, and asked for another instrument, and the master promised to furnish the same in such a case, does not render the master responsible if an accident occurs."

In the case at bar the servant had no means of acquainting herself with the condition of this ceiling. It was not an implement which she was using, and with the use of which she was familiar. The employer was bound to see that the room in which he placed the servant to sleep was suitable for that purpose; and when he was informed, as he appears to have been some time before the happening of the accident, as to the apparent condition of the ceiling, he assured her that it was all right, that she might sleep there with perfect safety, and that the ceiling would never come down. From this the servant had a right to assume that the landlord had knowledge of its

condition; that he was satisfied, from investigations which the servant herself was unable to make, that the ceiling was perfectly safe. There is no analogy between the two cases. In the case of Marsh v. Chickering the employé had the same means of knowledge as the employer. In the case at bar the employé had no means of knowledge, and the employer represented that he had knowledge; otherwise he could not have given the assurance that the ceiling was perfectly safe. It is not necessary to refer to the other cases cited in the brief of the appellants' counsel, because they are all within the line of the reasoning in the case of Marsh v. Chickering, supra.

It is further urged that the plaintiff failed to show that the defendants were guilty of negligence towards the plaintiff. This is undoubtedly true if the evidence upon the part of the defendants is to be taken as establishing the facts as claimed by them. But the difficulty is that this evidence is directly contradicted on the part of the plaintiff, and the jury has chosen to believe the plaintiff rather than the witnesses called on the part of the defendants.

It is claimed that the plaintiff was guilty of negligence contributing to the injury by sleeping beneath the defective ceiling, as she must have willfully put herself in a place of danger, there being sufficient means of avoiding injury. This point is based upon the assumption that the plaintiff had knowingly and voluntarily assumed the risk of an accident, or had exposed herself to danger when she could have avoided it; and it seems also to be assumed that there was some contributory negligence on the part of the plaintiff in not sleeping in the bed which the other girl had vacated. There is no evidence tending to show that the plaintiff knowingly and voluntarily assumed any risk or exposed herself to a danger which she could have avoided. As has already been stated, she was assured by the defendants that there was no danger, and she had a right to assume that the owner of the building knew what he was talking about when he informed her that the ceiling would never come down. Merely because there was a crack in the ceiling it does not by any means follow as a self-evident proposition that it was therefore liable to fall.

It is further urged that it was error to allow a physician to testify to the plaintiff's condition on the 13th of December, 1896, the trial taking place on the 16th of December, 1896; and that such condition was liable to be permanent, without connecting it with the accident which occurred on August 29, 1893. If the assumption of fact contained in this proposition were correct, the exception would undoubtedly be well taken. But the plaintiff's condition on the 13th of December, 1896, was by her testimony directly connected with the accident which occurred on August 29, 1893. She testified that before the happening of the accident she had been perfectly healthy; that certain results followed the accident; that she was attended by the physician who testified upon the trial for injuries resulting from the accident; and that her condition as it existed on the 13th of December, 1896, had continued from the time of the accident to the time of the trial. This conclusively connected the plaintiff's condition on the 13th of December, 1896, with the accident occurring on the 29th of August, 1893.

There were certain exceptions taken to the charge of the learned judge in submitting the case to the jury, the court having charged that an employer of labor in a case of this kind is bound to furnish the laborer with a reasonably safe place, and to exercise a reasonable care and prudence to see that the place is kept safe. The court also refused a request upon the part of the defendants to charge that the defendants were not bound to furnish plaintiff a safe sleeping room, or a sleeping room as a safe place, just the same as they would be bound to furnish her with a safe place to work in. There seems to be no error whatever in the rulings of the court. The cases cited to support the proposition contained in the request are precisely in the line of Marsh v. Chickering, that an employé takes the risks of dangers which are obvious and which are connected with his employment. As has already been shown, the risk of the falling of this ceiling was not obvious. The mere existence of cracks in a ceiling does not render it necessarily dangerous. The servant, fearing that there might be danger, appealed to the employer, and the employer assured her that it was entirely safe. Under the circumstances, she had a right to assume that this assurance was given from knowledge which he had acquired by examination. The judgment and order should be affirmed, with costs. All concur.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.