### GUDEN, Sheriff, v. DIKE.

(Supreme Court, Appellate Division, Second Department. April 17, 1902.)

1. GOVERNOR—REMOVAL OF SHERIFF FROM OFFICE—GROUNDS.

Const. art. 10, § 1, declares that "the governor may remove any officer, in this section mentioned, within the term for which he shall have been elected, giving to such officer a copy of the charges against him, and an opportunity to be heard in his defense." *Held* to authorize the governor to remove a sheriff, one of the officers mentioned therein, for misconduct prior to his election, affecting his usefulness as a public officer, as where he corruptly promised to appoint another as his counsel in the event of his election.

2. PUBLIC OFFICE—DELIVERY OF BOOKS AND PAPERS—TITLE TO OFFICE—DETERMINATION.

While the title to an office cannot be regularly tried or decided in proceedings on an application under Code Civ. Proc. § 2471a, providing summary proceedings to compel the delivery of books and papers belonging to a public officer, yet, where the facts are undisputed, the rights of the parties to the office may be passed on, where the title of the applicant is void beyond substantial doubt.

Appeal from special term, Kings county.

Application by Charles Guden, as sheriff of Kings county, to compel the delivery to him of books and papers belonging to his office, then in the possession of Norman S. Dike. From an order in petitioner's favor, and from order resettling such order (75 N. Y. Supp. 786), respondent appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

G. D. B. Hasbrouck, for appellant.

Jerry A. Wernberg (Benjamin F. Tracy, Charles H. Hyde, and Levi W. Naylor, on the brief), for respondent, Charles Guden.

WILLARD BARTLETT, J. This is an appeal from an order of a justice of the supreme court in a proceeding to enforce the delivery of books and papers under section 2471a of the Code of Civil Procedure. The moving party in the proceeding was Charles Guden, who was duly elected sheriff of Kings county at the general election held in 1901, and who qualified and entered upon the duties of the office at the beginning of the present year. On March 7, 1902, the governor of the state of New York, by an instrument in writing under his hand and the privy seal of the state, ordered "that the said Charles Guden be, and he hereby is, removed from the office of sheriff of the county of Kings." Thereafter, on the same day, the governor executed a certificate appointing Norman S. Dike sher-

iff of and for the county of Kings; and, under this certificate of appointment, Mr. Dike took possession of certain books and papers appertaining to the sheriff's office. Mr. Guden thereupon commenced the proceeding to obtain possession of the said books and papers, which is brought up before us for review by the present appeal, asserting, in substance, that his alleged removal was ineffective, inasmuch as the action of the governor was in disregard of the provisions of the state constitution. The charges against Sheriff Guden consisted of allegations of misconduct alleged to have been committed before he was elected to office; and Mr. Justice Gaynor, before whom the application was heard, decided that the governor had no jurisdiction to remove him except for charges of neglect or misconduct in office, and therefore held that he was still sheriff, and entitled to the books and papers which he sought. The order appealed from is the result of this decision.

The case, as presented here, is substantially this: Guden seeks the books and papers. He is not entitled to them if he has been lawfully removed from office. He has been removed from office if the governor, in assuming to remove him, acted within his constitutional jurisdiction. There was considerable discussion in the oral argument, and there is a good deal in the briefs and in the opinion of the learned justice below, upon the extent to which the court has power to inquire into the action of the executive in such a case as this. The question, however, need not be elaborately considered here, inasmuch as it was conceded at the bar, by counsel for both parties, that the court possesses the power, in a proper proceeding, to decide whether the governor acted within his jurisdiction or not; that is to say, whether he proceeded as prescribed by the constitution.

The provision under which Sheriff Guden was removed is the last sentence of section 1 of article 10 of the state constitution, which is in these words:

"The governor may remove any officer, in this section mentioned, within the term for which he shall have been elected; giving to such officer a copy of the charges against him, and an opportunity of being heard in his defense."

The officers referred to in the section are sheriffs, clerks of counties, district attorneys, and registers in counties having registers. It is plain, from the language which I have quoted, that the governor's power of removal over these officers is not absolute. It is a condition precedent to the exercise of that power that there shall be charges against the officer; that a copy of the charges shall be given to him; and that he shall be afforded an opportunity of being heard in his defense. The language of the constitution in respect to this matter necessarily imports more than is expressed. It plainly means that the charges must consist of matters which a public officer may reasonably be required to defend himself against. Hence it is clear that trivial allegations, in no manner affecting the character of the incumbent or his ability to discharge the duties of his office, are not within the contemplation of the fundamental law. I think it may fairly be said that the charges to which this con-

stitutional provision refers must be such acts of commission or omission as affect the usefulness of the incumbent as a public officer. But, assuming this to be so, it is said that those acts, in order to furnish the necessary constitutional ground for removal by the executive, must be alleged to have been committed, and must have been committed, after the beginning of the term of office; and, because the alleged misconduct of Guden occurred before his election, it has been held that it afforded no basis for the action of the governor. In considering this question, and in determining this appeal, it is necessary to refer to only one of the charges, to wit, the second of the amended and supplemental charges in the record before us. That charge is as follows:

"That in October, 1901, said Charles Guden illegally, corruptly, and contrary to good morals, and with the object of procuring and furthering his election to the office of sheriff of Kings county at the ensuing November election, promised and agreed that in return for the political support and influence at such election of one Bert Reiss, of the borough of Brooklyn, he, said Charles Guden, would, in the event of his election, appoint said Bert Reiss to the office or position of counsel to the sheriff of Kings County."

As to this charge, the governor says, in his memorandum filed with the order of removal:

"I find from the testimony given before me that Charles Guden, while a candidate for the office he holds, made a corrupt promise to and agreement with Bert Reiss to appoint him counsel to the sheriff in consideration of his activity and influence in securing influence and votes for that office in the election of 1901."

None of the proof taken before the governor has been placed before the court in this proceeding. In no point of view, therefore, can it be assumed that the evidence before him was not sufficient to justify the finding that this charge was true. It will be observed that the accusation is not merely that Guden promised to appoint Reiss counsel to the sheriff, but that he did this corruptly. It amounts substantially to a charge that, induced thereto by some corrupt consideration, the candidate for sheriff promised and agreed with another person that, in the event of his election, he would administer his office in a certain way for the benefit of that person. If such an agreement were corruptly made, its impropriety is not dependent upon the character of the official act subsequently to be performed. Suppose, for example, the case of a county treasurer authorized by law to select a depository for the public moneys under his custody. If prior to his election such an officer agreed, for a money consideration, with the president of a particular institution, to deposit the public moneys in that institution, there could be no question, I think, as to the impropriety of such an act, although, in the absence of any agreement on the subject, the institution might properly have been selected. Furthermore, it is to be observed that the corrupt agreement alleged in the particular charge now under consideration related, not to a time preceding the election and qualification of the officer, but that it was impossible of execution until he should become vested with the title to the office. In other words, it was a corrupt agreement, the time of performing

which was necessarily postponed to a period when he should become a public officer. In this respect the case differs, I think, from any of those cited by counsel or in the opinion below. In that opinion the precise question is stated to be "whether the governor had jurisdiction to entertain charges and remove from office for alleged acts of Guden committed before he entered into office, or whether his jurisdiction was limited to charges of acts committed by Guden after he came into office only." Whatever the conclusion might be, if the acts committed before Guden entered into office had no direct relation to his subsequent official conduct, I am of the opinion that a corrupt promise, made before election, to exercise his official powers in a particular way, affords a sufficient basis in law for the removal of the officer by the governor, under section 1 of article 10 of the constitution. It seems to me that the relation of the promise to the subsequent official tenure is so close as to make the act of entering into such a corrupt agreement affect the usefulness of the officer as clearly and directly as could any misconduct committed wholly after the official term began. I am unable to find, in any of the decisions cited in the opinion below, any rule authoritatively laid down which really conflicts with this conclusion. Rex v. Richardson, 1 Burrows, 517, 538, was a general demurrer by the king's coroner and attorney to the defendant's plea to an information in the nature of a quo warranto against Thomas Richardson, to show by what authority he claimed to be one of the portmen of the town or borough of Ipswich. The opinion of the court was delivered by Lord Mansfield, who stated the general question upon the plea to be "whether the defendant has set out a good title to the office of a portman of the town or borough of Ipswich." The right of the defendant depended upon two points: First, whether the vacancy which he was appointed to fill was duly made; and, secondly, if it was so made, whether the defendant was duly elected, admitted, and sworn. In considering the causes for which a municipal corporation might discharge an officer or corporator thereof, Lord Mansfield made this statement:

"There are three sorts of offenses for which an officer or corporator may be discharged: First, such as have no immediate relation to his office, but are in themselves of so infamous a nature as to render the offender unfit to execute any public franchise; second, such as are only against his oath, and the duty of his office as a corporator, and amount to breaches of the tacit condition annexed to his franchise or office; third, the third sort of offense for which an officer or corporator may be displaced is of a mixed nature, as being an offense, not only against the duty of his office, but also a matter indictable at common law."

Mr. Justice Gaynor, referring to this part of Lord Mansfield's opinion, says that the sum and substance of what was there laid down was that, where the power of removal existed in general terms, as is the case here, the particular causes for removal not being specified, the power could be exercised only for offenses committed by the official in office, and against the duties of his office, except for other offenses, either outside or inside of his term of office, of so infamous a nature as to disqualify him for office, in which case there had first to be an indictment and conviction. It seems to

me that this states the decision rather too broadly.  Lord Mansfield's second subdivision of offenses for which an officer or corporator may be discharged is not confined in terms solely to misconduct committed in office.   It includes such offenses as are against the oath of the officer and the duty of his office.   May it not well be that a person élected to an office commits an offense against the duty of his office when he makes a corrupt agreement in reference to the administration of that office?

In Speed v. Common Council, 98 Mich. 360, 364, 57 N. W. 406, 22 L. R. A. 842, 39 Am. St. Rep. 555, the opinion expressed by the court as to the insufficiency of the charges against the relator, so far as they dealt with acts committed before his appointment to office, was clearly obiter, inasmuch as what is said on that subject is prefaced by the statement that the sufficiency of the charges was not in issue.

The case óf Tyrrell v. Common Council of Jersey City, 25 N. J. Law, 536, is merely an authority to the effect that the common council of Jersey City had no power to expel a member for acts committed previous to his election, the question being whether such officer, having been expelled from the council once upon conviction of official corruption, and having been re-elected, could again be expelled for the same identical offense.

The case of Com. v. Shaver, 3 Watts & S. 338, 340, arose under a provision of the constitution of Pennsylvania, 'which was as follows:

"All officers for a term of years shall hold their offices for the terms respectively specified only on the condition that they so long behavé themselves well; and shall be removed on conviction of misbehavior in office or of any infamous crime."

Under this provision it was perfectly clear, of course, that the only misbehavior for which an officer could be removed was such as occurred while he was in office, inasmuch as the language of the constitution contained an express limitation to that effect.

The case of State v. Common Council of City of Duluth, 53 Minn. 238, 244, 55 N. W. 118, 39 Am. St. Rep. 595, involved the construction of a provision of the charter of the city of Duluth under which any member of the board of fire commissioners might be removed by a vote of two-thirds of all the members elect of the common council of said city, for sufficient cause.   In considering what was sufficient cause under this provision, the supreme court of Minnesota used this language:

" 'Cause,' or 'sufficient cause,' means 'legal cause,' and not any cause which the council may think sufficient.   The cause must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public.   The cause must be one touching the qualifications of the officer or his performance of its duties, showing that he is not a fit or proper person to hold the office.   An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power, and equivalent to an arbitrary removal.   In the absence of any statutory specification, the sufficiency of the cause should be determined with reference to the character of the office and the qualifications necessary to fill it."

There is nothing here which would exclude as a sufficient cause for removal such a corrupt promise as that which was charged against Guden and found by the governor in the present case.

In People v. Weygant, 14 Hun, 546, it appeared that the mayor of Newburgh had removed the relator from the office of marshal of the city upon charges, sustained by proof, that he had before his appointment held the office of collector of taxes, and had failed to account for and pay over the money collected by him to the city treasurer. The sole question was whether proof of this default as collector of taxes established incapacity, misbehavior, or neglect of duty as city marshal, and all that the court held was that such proof did not affect the qualification of the relator to hold the latter office, in respect of which no misbehavior or neglect of duty was established.

In the case of People v. McGuire, 27 App. Div. 593, 50 N. Y. Supp. 520, it was held that the authority conferred upon the mayor of Syracuse by the charter of that city to remove a fire marshal, "for cause upon charges duly furnished in writing by the mayor," imported some valid reason for the removal arising out of the nonperformance or improper performance of official duties by the incumbent. There was no question in that case, however, as to the sufficiency or insufficiency of any charge relating to misconduct prior to the assumption of his official duties by the relator; and the decision really turned upon the omission of the mayor to afford the relator an opportunity to be heard, which omission was declared to be fatal to the removal proceeding.

In the case of State v. Walker, 68 Mo. App. 110, there is no doubt an expression of opinion founded upon that in Speed v. Common Council, supra, to the effect that the misconduct for which an officer may be removed must be found in his acts and conduct in the office from which his removal is sought; but this, like that in the Michigan case, is an obiter dictum, inasmuch as the report of the case clearly shows that the charges and specifications of official misconduct against the officer related to a time "while he was the duly elected, qualified, and serving mayor of the city."

In addition to the foregoing cases, cited in the learned and careful opinion of Mr. Justice Gaynor, I have examined all those cited in the various briefs submitted upon the argument; and, while it may be conceded that courts have not infrequently expressed the opinion that the misconduct for which an officer may be removed must be committed after his accession to office, yet no actual decision has been brought to our attention which denies such power to remove for a corrupt agreement made prior to the beginning of the officer's term, which agreement can only be performed in the course of administering the office. Indeed there is a distinct intimation the other way in State v. Common Council of City of Watertown, 9 Wis. 254, 261, where this passage occurs in the opinion:

"We do not say that in no case could acts done during a prior term justify a removal. Thus if, after a treasurer was elected, it should be discovered that during his prior term he had committed a defalcation, and been guilty of gross frauds in the management of his office, it might perhaps

be just ground for removal. But where, as in this case, the charges show nothing more than a mere neglect of some formal duty, which the law may have required, involving no moral delinquency, and which, if violations of duty at all, must have been well known to the appointing power, we do not think, where they relate entirely to acts during a prior term of office, that they constitute due cause in law for the removal of an officer. For such offenses, if offenses at all, his reappointment should be regarded as a condonation. For, notwithstanding such acts, it does not follow but that after his reappointment, he may have fulfilled his duties with the strictest propriety."

It may also be suggested that the peculiar provisions of the constitution of this state would, in any event, render inapplicable those decisions in other states which recognize only misconduct in office as sufficient ground for removal. In section 7 of article 10 of the constitution, which follows the section providing for removals by the governor, it is declared that "provision shall be made by law for the removal for misconduct or malversation in office of all officers, except judicial, whose powers and duties are not local or legislative, and who shall be elected at general elections, and also for supplying vacancies created by such removal." It is a significant fact that in this section the power of removal is expressly restricted to "misconduct or malversation in office," while no such limitation is contained in the section relating to removals by the executive.

In a statutory proceeding of this kind, to enforce the delivery of books and papers, the title to an office cannot be regularly tried or decided; but the present case falls within the exception noted in Re Sells, 15 App. Div. 571, 44 N. Y. Supp. 570, and, as the facts were undisputed, the rights of the parties could properly be determined, as was done in Re Brenner, 170 N. Y. 185, 193, 63 N. E. 133.

It is only fair to the learned judge who heard the case below to say that the view which seems to me to require a reversal of his order does not appear to have been presented before him, and is not discussed in his opinion, although the point is clearly involved in the case.

In what has been said I have endeavored to confine the discussion to the precise question involved, and to avoid any expression of opinion further than such as is absolutely required by the facts before us as to the relative powers of the governor and the courts in the matter of the removal of public officers. The conduct of the affairs of government in this state is intrusted to three distinct, independent, and co-ordinate departments,—the executive, the legislative, and the judicial. Each has well-defined powers and limitations; and the judiciary should be as careful to refrain from interfering with the constitutional functions of the executive as it is jealous of the maintenance of its own prerogatives.

Order reversed, with $10 costs and disbursements. All concur.