## THOMPSON *v.* GIBBS.

### (*Knoxville.* October 24, 1896.)

1. PUBLIC SCHOOLS. *Power of directors to discharge teacher.*

   A reservation of the right to annul all contracts every fourth month, stamped across the face of a contract with a school teacher, engaging him to teach for an indefinite term, is not authorized by law, and is void, and does not invest the school directors with power to dismiss the teacher arbitrarily, without cause or trial, and employ another for the unexpired scholastic year. (*Post, pp. 490–494.*)

   Code construed: § 1430, Subsec. 3 (S.); § 1192, Subsec. 3 (M. & V.).

   Case cited and approved: Morley *v.* Power, 5 Lea, 691.

2. SAME. *Injunction not granted directors against teacher.*

   An injunction to prevent a school teacher from attempting to teach in a schoolhouse after a wrongful and ineffectual attempt to dismiss him arbitrarily, will not be granted to school directors, although they have by statute the charge and control of the school property. (*Post, pp. 494, 495.*)

   Code construed: § 1430, Subsec. 10 (S.); § 1192, Subsec. 10 (M. & V,).

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County. H. B. LINDSAY, Ch.

TRENT & FORD for Thompson.

LUCKY, SANFORD & TYSON for Gibbs.

BEARD, J. The complainants are school directors in one of the common school districts of Knox County, and they filed a bill in this cause seeking to enjoin the defendant from attempting to teach any longer in one of the schoolhouses of that district, which was under their control, and from interfering with its occupancy by a teacher whom complainants had employed to take charge of the school as the successor of defendant.

The facts are these: The defendant, Gibbs, had been elected to the presidency of an academy in this county, and was in the act of accepting that place, when, induced by complainants, he declined it, and entered into an agreement with them to take charge of and teach the district school with regard to which this controversy occurs. This school was to be opened on the thirtieth of August following, and for his services, as such teacher, he was to receive a salary of $50 per month. At the time of making this agreement, the defendant was led to believe that his employment would extend through a period of eight months, it being assumed, no doubt, that the fund available for that district would enable the directors to keep the school open for that length of time. On the twenty-seventh of August —just three days before his term of service was to begin—the complainants presented to defendant, for his signature, a paper writing, evidencing the contract between the parties, in which it was recited that the defendant was engaged as the teacher of the

school in question "from the thirtieth day of August, 1895," at the rate of $50 per month.

This writing, already signed by complainants as school directors, contained the usual stipulations authorized by law, but fixed no definite term of employment. Across the face of the writing, however, complainants had caused to be stamped the following words: "The directors reserve the right to annul all contracts every fourth month." Knowing that this clause was upon it, the defendant signed it, and, on the day designated, took his place and opened up the school. At the end of four months, without any charge being made against him, and without offering any excuse for their action, the complainants notified the defendant that they no longer required his service, and immediately employed another party in his stead. Complainants undertaking to induct into office the new teacher, found the defendant in possession of the schoolroom with his pupils around him, denying the right of the directors summarily and without cause to terminate his employment, and insisting that, under the contract, he was entitled to continue as teacher until the fund appropriated to that school for that scholastic year was exhausted. This position of the defendant led to the filing of the bill in this cause.

The Chancellor, on the trial of the case, sustained the bill, upon the ground that the clause above set out was a part of the contract, and that it gave the directors the right arbitrarily to terminate this

contract at the end of four months, and he made perpetual the injunction originally issued against the defendant. The cause was recently heard on appeal, by the Court of Chancery Appeals, and, while disagreeing with the Chancellor as to the ground of his decree, that Court affirms his decree, but upon the ground that, under the law, complainants "as school directors were the custodians of the schoolhouse and entitled to its possession, and that, upon the dismissal of defendant, he had no right to retain control of the property, and thus disturb the further harmony of the school or its operations under the supervision of the directors, but his duty was to surrender the schoolhouse, and seek his remedy, if any, elsewhere."

If school directors can legally import into their contracts of employment of public teachers a clause such as the one in question, this case illustrates the wrong and injustice which may be done under cover of law. And we agree with the solicitor of defendant that "such an injustice should not be sanctioned by the Courts unless the law clearly permits it." But, independent of the injury that may be done to the individual, public policy would forbid the recognition of such power, unless it is distinctly conferred by the statutes. As has been well urged, if school directors can provide, as in this case, for annulling contracts at the end of four months, they can also reserve the right to terminate them at the end of one month, or at their own pleasure. It is

apparent, if they possess such a power, that there will likely be, in the caprice of the directors themselves, or in the real or fancied grievances of the pupils, or of their oversensitive parents or guardians, continually recurring temptations to its abuse. A system which gave such arbitrary authority to school directors could not result otherwise than in lowering the character of teachers and in demoralizing the public schools.

It will be observed that the contract which gives rise to this controversy does not limit the term of employment of the defendant, Gibbs, to four months. It is in the usual form prescribed by the regulations adopted under the statute, by the Superintendent of Public Instruction, and sent out by him for the use of school directors in the various counties of the State. This form is left indefinite as to the time of employment, because the length of the period during which common schools are to be kept open depends upon the amount of public funds which come into the hands of the County Trustee, to which the particular district is entitled. This is always uncertain at the beginning of the scholastic term. What complainants have done in this case, is to take this approved form and supplement it with the reservation to themselves of the right to terminate the contract at the end of four months. This they had no warrant in the law for doing.

Under Subsec. 3 of § 1192 of the (M. & V.) Code, school directors have the power to employ

teachers and "to dismiss them for incompetency, improper conduct, or inattention." This right of dismissal, however, is limited to the causes of removal specified in the statute. And even for these causes their power is not unlimited, but can only be exercised after charges made against and upon full notice given to the accused, and after hearing the testimony of witnesses, given under the sanction of an oath. *Morley* v. *Power*, 5 Lea, 691.

To permit school directors, under the cover of a reservation, such as the one in question, to dismiss a teacher, without charges or notice or testimony, would be to approve an evasion of this statute as already construed by this Court, and to tolerate a practice that would be, in the end, extremely hurtful to our common school system. We therefore disagree with the Chancellor in the view that he took of this stipulation.

But we equally disagree with the Court of Chancery Appeals in their conclusion. It is true that it is the duty of school directors "to take charge of, manage, and control public school property of the district (Code, M. & V., Subsec. 10, § 1192), but that is not only for the purpose of preservation, but also with the view of making successful the operation of the system, which has been carefully organized for the accomplishment of great public good. They have the supervision of it for school purposes—purposes to be subserved only by its occupancy by the teacher properly installed by them,

and not yet legally removed, and the qualified pupils of the district. Their right to possession will be protected in all proper cases, but this right is not unlimited, nor is it arbitrary. Now, having exceeded their authority, as we have held, can complainants come into a Court of Equity and ask its active aid in assisting them to the accomplishment of an unauthorized end? We think not. To give such aid, would be for that Court to disregard the well-settled principle that a "complainant must show that the transaction from which his claim arises is fair and just, that there is nothing unconscientious in his conduct relative thereto, and that the relief he seeks is equitable, and not harsh or oppressive upon the defendant." Gibson's Suits in Chancery, Secs. 53 and 62.

The result follows that the decree of the Court of Chancery Appeals will be reversed, and the bill will be dismissed at the cost of complainants.