THE PEOPLE OF THE STATE OF NEW YORK ex rel. KATE
M. MURPHY, Appellant, *v.* WILLIAM H. MAXWELL, as City
Superintendent of Schools of the City of New York,
Respondent.

NEW YORK (CITY OF) — BY-LAW OF SCHOOL BOARD OF BOROUGH OF
BROOKLYN DECLARING VACANT THE PLACE OF A FEMALE TEACHER
WHO MARRIES VOID. The Greater New York charter having specifically
provided (L. 1897, ch. 378, §§ 1114, 1117, re-enacted in L. 1901, ch. 466,
§§ 1093, 1101) that teachers in the public schools of the city shall hold
their positions subject only to the limitations of the act and to reassign-
ment or to removal for cause, after trial upon charges, "for gross mis-
conduct, insubordination, neglect of duty or general inefficiency," such
provisions are necessarily exclusive, and, therefore, a by-law of the board
of education of the former city of Brooklyn, adopted or continued by the
school board of the borough of Brooklyn, providing that "should a
female principal * * * or teacher marry, her place shall thereupon
become vacant," is in conflict with the charter and void, since the board
had no power either to pass a by-law on the subject or to provide for the
compulsory termination of the employment of a teacher except in the
manner pointed out by the statute.

*Matter of Murphy* v. *Maxwell*, 87 App. Div. 131, reversed.

(Argued February 9, 1904; decided February 23, 1904.)

APPEAL, by permission, from an order of the Appellate
Division of the Supreme Court in the second judicial depart-
ment, made October 16, 1903, which reversed an order of
Special Term granting a peremptory writ of mandamus to
compel defendant to recognize the relator as a teacher in the
public schools of the city of New York and granted an alter-
native writ.

The facts, so far as material, and the questions certified, are
stated in the opinion.

*Conrad Saxe Keyes* for appellant. This by-law conflicts
with section 1114 of the charter of 1897. (*People ex rel. v.
Bd. of Education*, 174 N. Y. 169.)

*John J. Delany, Corporation Counsel* (*James D. Bell* of
counsel), for respondent.

CULLEN, J.   In February, 1891, the relator was appointed
a teacher in one of the public schools of the then city of
Brooklyn.   At that time there was a by-law of the board of
education of the city which provided: " Should a female
principal, head of department or teacher marry, her place shall
thereupon become vacant, but her marriage shall not operate
as a bar to her reappointment, should it be deemed to the
best interests of the school to retain her services."   After the
consolidation of the city with the city of New York, the
borough school board adopted or continued that by-law.   On
January 21, 1902, the relator married.   Thereupon she noti-
fied the local committee of the school in which she taught,
and applied for reappointment or continuance in her position.
She asserts that she was reappointed by the borough board,
but this fact was put in issue by the affidavits submitted on
behalf of the respondent.   Still, as she alleged, and the allega-
tion was not denied, no one was appointed in her place and
she continued to discharge all the duties of her position as
teacher, and no action has been taken by the board of educa-
tion to dismiss her from her employment.   Under the by-laws
of the city board of education, it was the duty of the respond-
ent to certify to the auditor the names and salaries of the
teachers, and without such certification teachers were unable
to draw their pay.   On an affidavit stating those facts the
relator applied to the Special Term for a peremptory writ of
mandamus, directing the respondent to recognize her as a
teacher of the public schools and to certify her name to the
auditor that she might be paid her salary.   As already stated,
the affidavits on behalf of the respondent controverted none
of the facts stated by the relator, except those referring to
her reappointment.   The Special Term granted the peremptory
writ as asked for by the relator, on the ground that her
employment could not be terminated without affirmative
action taken by the borough board of education to dismiss
her.   On appeal the Appellate Division reversed the order of
the Special Term, holding that the relator's marriage *ipso facto*
terminated her employment, but directed that an alternative

writ issue to determine the controversy as to her reappointment. The Appellate Division thereafter allowed an appeal to this court and certified three questions for determination: *First.* Is the by-law of the former borough school board of Brooklyn above recited a reasonable regulation? *Second.* Is the aforesaid by-law in conflict with section 1114 of the charter of 1897 of the city of New York providing for the removal of members of the educational and teaching staff after trial and hearing upon charges and prescribing the grounds of such removal? *Third.* Can such by-law operate to vacate the position of women principals and teachers without the taking of affirmative action by the board of education or the borough school board as prescribed by the charter of the city of New York looking to their removal?

It is not necessary nor would it be profitable to discuss the question whether a by-law providing that a female teacher shall by marriage vacate her employment is reasonable or not, nor if it be assumed that such a by-law would be reasonable, to consider whether the particular by-law in this case, which in effect provides that by marriage a female teacher's employment shall cease or not at the option of the borough board, is reasonable, as we are of opinion that under the charter the board had no power either to pass a by-law on the subject or to provide for the compulsory termination of the employment of the teacher except in the manner pointed out by the statute. Prior to the creation of the present city the public school system of the old city of New York was governed by the provisions of the Consolidation Act of 1882 (Chap. 410). Section 1038 of that statute empowered the board of trustees for the ward, by a vote of their whole number, to remove teachers other than principals and vice-principals provided the removal was approved by a majority of the inspectors for the district, subject to a right of appeal to the board of education, which might reinstate the teacher. Section 1042 authorized the board of education by a three-fourths vote to remove any teacher on the recommendation of the city superintendent or of a majority of the ward trustees or of the inspectors of

the district. It is very clear that these provisions of the statute were exclusive and that a teacher could be removed only in the manner therein prescribed, and so it has been held by the courts. (*Steinson* v. *Board of Education of N. Y.*, 165 N. Y. 431.) In the Greater New York charter the only provisions as to their tenure of employment and the dismissal of teachers from their places (except those relating to compulsory retirement) are found in sections 1114 and 1117. The latter of these sections provides :. " All superintendents, assistants or associate superintendents, and all principals, teachers and other members of the educational staff in the public school system of any part of the City of New York as constituted by this act, shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the various school boards, subject to the limitations of this act, and to reassignment or to removal for cause, as may be provided by law." By section 1114 a member of the school board, a borough superintendent or an associate superintendent is authorized to prefer charges to the school board against any principal or against any teacher in any of the schools under their charge " for gross misconduct, insubordination, neglect of duty or general inefficiency." Provision is made for the suspension of the teacher charged with such delinquency. It is then provided that the school board shall immediately proceed to try and determine the case either by the full board or by a committee, and fix the fine, penalty or punishment, if any, that should be imposed, which " shall consist of a fine, in suspension for a fixed time without pay, or in dismissal." Now, bearing in mind the mandate of section 1117, that the teachers shall continue to hold their positions subject only to the limitations of the statute and removal for cause and that the only grounds for removal provided by the charter are gross misconduct, insubordination, neglect of duty or general inefficiency, we think that these statutory provisions are also necessarily exclusive. It is unreasonable to believe that the draftsmen of the Greater New York charter or the legislators who enacted it, having before them as the founda-

32

tion of that charter the Consolidation Act of 1882, which prescribed. the only method in which a school teacher could be removed, and having themselves provided in the charter for dismissal for specified causes, should have intended by the grant of any general power to the board of education to authorize the removal of teachers from their employment on any other grounds or in any other manner than those stated in the statute. Nor is the power given by the charter to enact by-laws sufficient to cover the case before us. The statute authorized each borough board subject to the control of the board of education to enact by-laws not in conflict with the provisions of the charter " for the government and management of the schools in the borough, for defining the duties and regulating the exercise of the powers of its members and committees and of all school officers   *   *   * and for the promotion and welfare and best interests of all matters committed to it concerning the public schools and the public school system of the city in said borough." Under this authority the board might prescribe the manner in which a school teacher should discharge the duties of the position, and violation of such by-law would constitute insubordination for which the offender might be proceeded against, but in no other way does it confer any power on the board to deal with the subject of dismissals.

It follows that the order of the Appellate Division should be reversed, and that of the Special Term affirmed, with costs, that the first question should remain unanswered, that the second question should be answered in the affirmative and the third in the negative.

Parker, Ch. J., Haight, Martin, Vann, JJ. (and Gray, J., in result on the ground that affirmative action was necessary on the part of the board of education), concur; O'Brien, J., dissents.

Order reversed, etc.