(82 Misc. Rep. 684.)

PEOPLE ex rel. PEIXOTTO v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. November 15, 1913.)

1. CONSTITUTIONAL LAW (§ 56*)—COURTS—JURISDICTION OF SUPREME COURT—POWER OF LEGISLATURE.

As the Supreme Court, under Const. art. 6, § 1, has general jurisdiction of law and equity, neither Greater New York Charter (Laws 1901, c. 466) § 1093, nor Education Law (Consol. Laws 1910, c. 16) § 880, respectively providing that the report of the committee holding the trial of teachers shall be subject to final action by the board, except in matters as to which an appeal may be taken to the commissioner of education, and that the decision of the commissioner of education shall be final, can oust the court of jurisdiction to give relief to deposed school teachers in proper cases; the Legislature not having the power to restrict the court's jurisdiction.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 62–65; Dec. Dig. § 56.*]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 141*)—REMOVAL OF TEACHER—JURISDICTION OF COURTS.

Where there is no present incumbent of the officer of state commissioner of education, a teacher wrongfully deposed may resort to the Supreme Court for relief, notwithstanding Education Law (Consol. Laws 1910, c. 16) § 880, providing that the decision of the state commissioner of education shall be final as to the propriety of the dismissal of the teacher.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 301–304; Dec. Dig. § 141.*]

3. "MANDAMUS" (§ 79*)—SCOPE OF WRIT—"CERTIORARI."

The office of a writ of "certiorari" is to review the judicial action of public officers or bodies exercising judicial functions, and cannot be invoked to review the acts of an executive, legislative, or administrative officer; hence "mandamus," which is a writ appropriate to compel the action of public officers or bodies exercising executive or administrative functions, is properly invoked by a teacher, who was wrongfully dismissed by the board of education, to compel her reinstatement.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 170–176; Dec. Dig. § 79.*

For other definitions, see Words and Phrases, vol. 5, pp. 4323–4330; vol. 8, pp. 7714, 7715; vol. 2, pp. 1035–1041; vol. 8, p. 7598.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. SCHOOLS AND SCHOOL DISTRICTS (§ 141*)—PUBLIC SCHOOLS—STATUTES.

As Greater New York Charter (Laws 1901, c. 466) § 1093, provides that a teacher may be removed for misconduct, insubordination, neglect of duty, and general inefficiency, it is to be presumed that the board of education cannot dismiss a teacher on any other ground.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 301–304; Dec. Dig. § 141.*]

5. SCHOOLS AND SCHOOL DISTRICTS (§ 141*)—PUBLIC SCHOOLS—TEACHERS—DISMISSAL.

A female teacher in the public schools of New York City cannot be removed because of her marriage; the statute specifying no such ground of removal.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 301–304; Dec. Dig. § 141.*]

6. SCHOOLS AND SCHOOL DISTRICTS (§ 141*)—TEACHERS—REMOVAL—GROUNDS.

Greater New York Charter (Laws 1901, c. 466) § 1093, provides that a teacher may be removed for misconduct, insubordination, neglect of duty, and general inefficiency, while the by-laws of the school board provide that a teacher's absence may be excused when caused by serious personal illness, death in the teacher's immediate family, compliance with the requirements of the court, and quarantine established by the board of health. *Held* that, as a female teacher might marry without being subject to removal, the charter grounds being exclusive, and as serious personal illness will, under the by-laws, excuse absence, the absence of a married female teacher on account of maternity does not constitute neglect of duty authorizing dismissal.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 301–304; Dec. Dig. § 141.*]

Mandamus by the People, on the relation of Bridget C. Peixotto, against the Board of Education of the City of New York. Peremptory writ granted.

Alfred J. Talley, of New York City (Denis R. O'Brien, of New York City, of counsel), for relator.

Archibald R. Watson, Corp. Counsel, of New York City (Charles McIntyre, of New York City, of counsel), for respondent.

SEABURY, J. This is an application for a peremptory writ of mandamus directing the respondent, the board of education of the city of New York, to restore relator as teacher in charge of public school No. 14, borough of the Bronx, city of New York, from which position she was dismissed by respondent on October 8, 1913.

For 18 years prior to February 3, 1913, relator had been a teacher in the public schools of the city of New York. During this period she paid into the pension fund for teachers her pro rata assessment. Her dismissal, if valid, involves a forfeiture of her rights in the pension fund for teachers. The relator is a married woman, living with her husband. On February 3, 1913, relator absented herself from the school to which she had been assigned, claiming to have been ill with some affection of her ears and nose, and immediately gave notice to the proper school authorities of her absence and the cause therefor, and accompanied this notice with a physician's certificate substantiating her claim. On April 7, 1913, relator gave birth to a child. On April 22, 1913, relator received from District Superintendent Taylor a no-

tice suspending her from duty. To this notice was attached a copy of the charges alleging "neglect of duty," and the specification was as follows:

"The reason for this action is the continuance of absence of Mrs. Peixotto from duty since February 3, 1913, for the purpose of bearing a child."

On May 8, 1913, relator received another notice alleging "neglect of duty," and specifying the neglect as "absence from duty without leave from February 3, 1913." On June 10, 1913, relator was tried by the elementary schools committee upon said charge of "neglect of duty." On June 25, 1913, said committee submitted to the board of education a report and resolutions purporting to find relator guilty of said charge, and recommending the adoption by respondent of its report and the resolutions attached thereto, finding relator guilty, and making the punishment dismissal. A minority report of said committee was also submitted. The majority report contains an elaborate argument designed to demonstrate that maternity necessitates frequent and long absences from duty; that its effect upon the pupils is not good; that the presence of the teacher who is about to become a mother exerts an unfavorable influence upon the older girl pupils. The majority report also elaborately considers the same question under the captions "relation of the home to the school," "influence on the teacher's child," "the retention of such teachers is unfair," and "race suicide." The minority report contains an argument attempting to refute the arguments contained in the majority report. This aspect of the case is important as showing the true ground upon which the relator was dismissed.

In the majority report it is said:

"In stating the cause of her absence, she failed to state the fact of her pregnancy. While the committee does not approve of this conduct, and in fact condemns it, it desires to base its action not on the ground of this concealment, but wishes the question at issue to be fairly and squarely met, and to present to this board whether under the circumstances (aside from the concealment of the approaching birth) this teacher and all others similarly situated should be retained in the service."

The respondent approved and adopted the majority report on October 8, 1913. The original notice preferring charges against the relator, the elaborate reports of the committee of elementary schools to the respondent, and the action of the respondent in adopting the majority report, leave no room for doubt that the reason for the suspension and dismissal of the relator was correctly stated in the original notice served upon her, which declared that:

"The reason for this action is the continuance of absence * * * from duty since February 3, 1913, for the purpose of bearing a child."

The attempt of the counsel for the respondent to make it appear that the fact that the relator gave birth to a child was a circumstance which in no way influenced the action of the respondent, and that its action was based solely upon the finding of "neglect of duty" independent of that fact, is controverted by the record, and is inconsistent with the declared purpose of the majority report to have the question at issue

between the majority and minority presented and determined. No one who is not desirous of avoiding a decision upon the merits can read this record without being satisfied that the real point in dispute is whether the respondent had the legal right to dismiss relator for "neglect of duty" on account of absence for the purpose of bearing a child.

The learned counsel for the respondent contends (1) that the Supreme Court has no jurisdiction of the cause, and (2) that, even if the Supreme Court has jurisdiction, certiorari and not mandamus would be the appropriate remedy. Before discussing the case upon the merits, it is necessary to consider these objections:

(1) The claim that the Supreme Court is without jurisdiction is based upon the contention that the state commissioner of education alone can review the action of the respondent.

[1] The provision contained in section 1093 of the Greater New York Charter that the report of the committee holding the trial "shall be subject to *final* action by the board, * * * except as to matters in relation to which" an appeal may be taken to the commissioner of education, and the language of section 880 of the Education Law that the decision of such commissioner "shall be final and conclusive and not subject to review in any place or court whatever," do not deprive a party of the right to seek redress in the courts or withhold from the tribunals of justice the right in appropriate cases to grant relief. People ex rel. Miller v. Peck, 73 App. Div. 89, 76 N. Y. Supp. 328; People ex rel. Underhill v. Skinner, 74 App. Div. 58, 77 N. Y. Supp. 36.

Under the Constitution of this state the Supreme Court has general jurisdiction of law and equity (article 6, § 1), and its jurisdiction cannot be limited by the Legislature.

[2] There is another reason why the relator cannot be denied the right to appeal to the courts, and that is that since the death of Dr. Draper there has been in this state no state commissioner of education. One has been appointed, but he has not as yet qualified. While the office of state commissioner of education remains vacant, the respondent's action is not subject to review by any person or board engaged in educational work in this state.

[3] (2) The objection that the relator should seek redress through a writ of certiorari rather than a writ of mandamus is not well taken. These writs are often regarded as possessing similar attributes, but the points of difference between them are well recognized. The office of the writ of certiorari is to *review* the judicial action of public officers or bodies exercising under the laws judicial functions, and can never be invoked to review acts of an executive, legislative, or administrative character, even though those acts may involve the exercise of discretion. People ex rel. Trustees et al. v. Board Supervisors, 131 N. Y. 468, 471, 30 N. E. 488.

The office of a writ of mandamus is to *compel* the action of public officers or bodies exercising executive, legislative, ministerial, or administrative functions, where the act of such official or body violates the clear right of one as to whom a failure of justice will result if the writ be not issued. It will not issue to review discretionary acts.

It is an appropriate remedy for clerks or employés who are *unlaw-fully* removed from their positions by superior authority, and may be resorted to for the purposes of obtaining and compelling reinstatement in public employment in the absence of any element of discretion on the part of those against whom it is sought.

[4-6] If, as is claimed by this relator, the respondent in dismissing her acted illegally and without jurisdiction, mandamus is the proper remedy. If, on the other hand, the respondent acted within the law, and in the exercise of its authorized discretionary powers, then it is manifest that the relator's rights have not been violated, and that there is no occasion to resort either to mandamus or certiorari. Thus the question is squarely presented for determination. Did the respondent have the legal right to dismiss relator for "neglect of duty" because of the temporary absence of relator for the purpose of bearing a child? It should be borne in mind that the courts are not to determine questions presented according to their individual views, nor are they authorized arbitrarily to declare whether a particular act is in accord with their own conceptions of public policy. All such considerations are for the legislative rather than the judicial branch of the government.

The question for the court to answer in reference to the action of this respondent is simply, "Was it lawful?" If it was lawful, the court must so declare it, regardless as to whether it was a wise or unwise act. If it was unlawful, the duty of the court is to so pronounce it, and to direct the reinstatement of this relator. Under section 1093 of the Greater New York Charter a principal or teacher may be removed for any one of the four causes which are distinctly specified therein. These causes of removal are (1) misconduct, (2) insubordination, (3) neglect of duty, and (4) general inefficiency. The Court of Appeals has held that teachers in the public schools of the city hold their positions subject only to the limitations contained in this statute, and that the provisions of this statute are necessarily exclusive. People ex rel. Murphy v. Maxwell, 177 N. Y. 494, 69 N. E. 1092. In the case last cited Judge Cullen, after reviewing the statutory provisions applicable to the subject, said:

"Now, bearing in mind the mandate of section 1117, that the teachers shall continue to hold their positions subject only to the limitations of the statute and removal for cause, and that the only grounds for removal provided by the charter are gross misconduct, insubordination, neglect of duty, or general inefficiency, we think that these statutory provisions are also necessarily exclusive. It is unreasonable to believe that the draftsmen of the Greater New York Charter or the legislators who enacted it, having before them as the foundation of that charter the Consolidation Act of 1882 (Laws 1882, c. 410) which prescribed the only method in which a school teacher could be removed, and having themselves provided in the charter for dismissal for specific causes, should have intended by the grant of any general power to the board of education to authorize the removal of teachers from their employment on any other ground or in any other manner than those stated in the statute."

Applying these principles to the case then before it, the Court of Appeals held that a by-law which provided that, "should a female principal * * * or teacher marry, her place shall thereupon become vacant," is in conflict with the charter and void. Thus it is settled that the

board of education is without authority to remove a female principal or teacher because of her marriage. This being so, it seems to me self-evident that the respondent cannot dismiss a married female principal or teacher because of the fact that she has given birth to a child. If she cannot be removed because of her marriage, she cannot be removed because of an act which is a natural incident of her marriage.

A teacher who is guilty of "neglect of duty" may, of course, be removed, regardless of the fact that she is a mother. No one disputes that proposition. Under the by-laws of the respondent, absence per se is not "neglect of duty." Whether or not it constitutes "neglect of duty" depends upon the circumstances of each particular case. The by-laws of the respondent recognize that there are occasions where a principal or teacher is necessarily and excusably absent. Indeed, the by-laws make definite provisions for such cases. Cases coming within these provisions are clearly not to be construed to constitute "neglect of duty." Section 44 of the by-laws of the respondent prescribes the conditions under which a principal or teacher may be absent with and without pay. Subdivision 5 of that section provides that absence may be excused—

"for any of the following reasons: (a) Serious personal illness; (b) death in the teacher's immediate family; (c) compliance with the requirements of a court; (d) quarantine established by the board of health."

From the provisions of section 44, it appears that absence on account of "serious personal illness" is not ground of removal, and that no pay is allowed during absence, and that a refund can only be had upon application after the termination of the absence, and that no refund shall be allowed for absence exceeding 95 days in any one year. While prolonged absence may in some cases furnish ground for removal (O'Leary v. Board of Education, 93 N. Y. 1, 45 Am. Rep. 156), yet it is settled that absence caused by illness or disability not caused by the fault or wrongdoing of the employé of a temporary character will not constitute ground for removal (People ex rel. Mitchell v. Martin, 143 N. Y. 407, 38 N. E. 460; People ex rel. Nugent v. Police Commissioner, 114 N. Y. 245, 21 N. E. 421; Wolfe v. Howes, 20 N. Y. 197, 75 Am. Dec. 388; Cukson v. Stones, 1 El. & El. 248; Loates v. Maple, 88 L. T. N. S. 288; Spindel v. Cooper, 46 Misc. Rep. 569, 92 N. Y. Supp. 822.

If relator's absence was caused by "serious personal illness" of a temporary character, she could not be dismissed either upon this ground or upon the ground of "neglect of duty." It requires no strained or forced construction to hold that the words "serious personal illness" include illness caused by maternity. The absence of the relator was therefore excusable under the by-laws of the respondent, unless it can be inferred that the Legislature in using the words "neglect of duty" in section 1093 of the Greater New York Charter intended to include therein absence caused for the purpose of bearing a child. There is nothing in the language of the charter which would justify the assumption that by the use of the words "neglect of duty" the Legislature intended to include the case of a married teacher whose absence was caused in order to give birth to a child. To impute such an intention to the Legislature would be a gratuitous and arbitrary attempt on the

part of the court to legislate and to read into the law a provision which there is no reason to believe the Legislature would have inserted. The policy of our laws favors marriage and the birth of children, and I know of no provision of our statute law or any principle of the common law which justifies the inference that a public policy which concededly sanctions the employment of married women as teachers treats as ground of expulsion the act of a married woman in giving birth to a child. Whether the Legislature should exclude married women from the schools as teachers, assuming that it has the power to do so, is a question upon which there may be and are differences of opinion; but it is not a question within the province of the court to decide. The fact is that the Legislature has sanctioned the employment of married women as teachers. Married women being lawfully employed as teachers and excusable for absence caused by personal illness, the idea that because the illness resulting in absence is caused by maternity it therefore becomes "neglect of duty" is repugnant to law and good morals. Until the Legislature shall exclude married women as teachers, or shall provide that absence of the teacher on account of maternity shall constitute "neglect of duty," I know of no authority resident in the board of education or the courts so to hold.

It is clear that absence caused by personal illness of the teacher, not the result of maternity or of fault or wrongdoing on the part of the teacher, is not "neglect of duty" within the statute and by-law. Can it be correctly said that if such illness is the result of maternity the absence resulting is "neglect of duty?" If so, then it is not the absence of the teacher per se which constitutes "neglect of duty," or the fact that the absence is caused by illness, but the charge of "neglect of duty" is predicated *solely* upon the fact that the cause of the illness is maternity. To so hold is to construe the statute and by-law to mean that absence resulting from personal illness from any cause other than maternity or the fault or wrongdoing of the teacher is excusable, but that absence resulting from illness caused by maternity is inexcusable and therefore "neglect of duty." Such a construction of the statute and by-law is unreasonable. It is much more in accord with reason to hold that the absence of a teacher resulting from personal illness, including illness caused by maternity, is excusable and therefore not to be considered "neglect of duty."

The fact that the personal illness resulting in the absence of the relator was caused by maternity did not on that account render it inexcusable, and relator's absence did not because of that fact constitute "neglect of duty" as those words are used in the statute.

It is pure sophistry to argue, as does the learned counsel for the respondent in his brief, that maternity is an indication of health, and therefore cannot be said to cause "serious personal illness." The same argument was urged, in The Queen v. Wellings (3 Q. B. Div. 426), by the counsel for the defendant in that case; but it was overruled by the Court of the Queen's Bench in the opinion of Lord Coleridge, C. J., who expressed the unanimous decision of the court.

If, however, there was no by-law of the respondent excusing absence due to "serious personal illness," it might well be held, in view of the duration and of the nature of the relator's employment, that the law

would excuse temporary absence resulting from any personal disability not caused by the fault or wrongdoing of the employé. As maternity cannot be attributed to the fault or wrongdoing of the relator, and as her absence was due solely to that cause, such an absence cannot be held to be "neglect of duty."

It is at least open to question whether, if the contract with the relator had expressly provided that it should be terminable in the event of the relator giving birth to a child, such a condition of the contract would be valid, and certainly in the absence of express provision the courts will not *imply* that so odious a condition was a part of the contract.

Motion for a peremptory writ of mandamus is granted.