Argued December 2 and December 14, affirmed December 21, 1915.
Rehearing denied January 18, 1916.

## RICHARDS v. DISTRICT SCHOOL BOARD.*

(153 Pac. 482.)

Statutes—Schools—Removal of Teachers.

1. All the provisions of a statute must be given effect if possible, under a reasonable construction; for example, Section 1 of Laws of 1913, Chapter 37, page 69, gives the board of directors of every school district the power to remove and discharge all teachers as it may deem necessary; Section 4 provides that teachers employed in a district as regularly appointed teachers for not less than two successive years shall be placed upon the list of permanently employed teachers; Section 5 that such teachers shall serve until dismissed, subject to the board's rules which shall be reasonable; Section 6 that before dismissal, any teacher on the permanent list shall receive written

*On *mandamus* to compel the reinstatement of a teacher, see note in 49 L. R. A. (N. S.) 62.                    REPORTER.

notice stating the cause, a copy of any charges filed, and, on request, shall be entitled to a hearing before the board; and Section 11 repealed all acts in conflict therewith. These sections must all be read with reference to each other, and mean that the school board has the power to dispense with the services of all teachers, but must proceed in the manner pointed out by the statute—it has no power to remove without a hearing, and for an arbitrary or capricious reason.

**Schools and School Districts—Removal of Teacher.**

2. Laws of 1913, Chapter 37, page 69, providing for the employment of school teachers, for the creation of a permanent list of teachers, and for their removal after written notice and a hearing, taken in connection with Laws of 1913, Chapter 172, pages 299, 304, Section 1, subdivision 22, authorizing school boards to dismiss teachers only for good cause, limit the power of dismissal to reasonable causes.

**Power of School Boards to Enlarge Statutory Contract.**

3. A school board has not authority to add to a teacher's contract of employment provisions as to the term or conditions of service beyond those found in the statutes defining the powers of the board.

**Schools—Marriage as Reason for Dismissing Teacher.**

4. The dismissal of a teacher because of becoming married is an arbitrary and capricious act, in violation of a statute giving school boards the right to dismiss teachers for reasonable cause.

**Mandamus to Reinstate Teacher Unlawfully Removed by School Board.**

5. *Mandamus* will lie to compel a school board to reinstate a teacher who is holding under a statutory tenure, and has been removed either without proper proceedings or for an insufficient reason.

[*Mandamus* as remedy to restore party to office, see note in Ann. Cas. 1912A, 930.]

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.   Statement by MR. JUSTICE HARRIS.

School District No. 1, in Multnomah County, has a population of 20,000 or more persons. Maud L. Richards is the holder of a life diploma, entitling her to teach in any high department of the public schools of the district. On September 22, 1911, the board of directors of the school district elected the plaintiff, whose name was then Maud L. Marsh, a teacher in the Trades School for the ensuing year; on May 23, 1912, she was re-elected for the school year beginning September 16, 1912; on May 19, 1913, she was again

elected for the ensuing school year, which commenced September 15, 1913, and, having been employed for two successive annual terms, her name was placed upon the list of permanently employed teachers, as directed by Chapter 37 of the Laws of 1913, which became effective on June 3d of that year. The plaintiff performed the duties of teacher from September 22, 1911, when first elected, until January 5, 1915, when she received oral notice that she was dismissed because she had married on the preceding day. The school board had adopted a rule that:

"Married women shall not be eligible to positions as teachers in the district except by special resolution of the board. All women teachers who marry during their time of service, thereby terminate their contracts with the district."

On or about May 19, 1913, the plaintiff received from the board a notice which, so far as material here reads thus:

"At a meeting of the board of directors held on the above date, you were elected a teacher in the schools of this district for the ensuing school year, day sessions. Your term of service will begin on Monday, September 15, 1913, * * By special resolution of the board, all women teachers who marry while in the service of the district, thereby terminate their service with the district; but such marriage shall not operate to bar them from reappointment, should it be deemed by the board to be to the best interests of the school to retain their services. This agreement is subject to the rules and regulations of the board, which are at present in force, or which may hereafter be made while you are in the service of the district. * * By another resolution of the board, it was also ordered and provided, that in case of a repeal of the law making the tenure of the position of teachers permanent, no action of the board would extend the

teacher's service beyond the end of the school year, during which such law should be repealed. If you accept the position to which you have been elected, as herein noted, please fill in the blanks on, and sign the inclosed acceptance form, and file in my office, on or before July 10, 1913; otherwise the board will consider the position vacant, and will proceed to fill same.

"Yours very truly,

"R. H. Thomas,

"Clerk.

"I accept the position above named and defined, on the conditions specified."

The plaintiff signed the acceptance form and returned the paper to the board.

At some time in the forenoon of January 4th, the plaintiff informed the principal of the school that she "expected to be married that evening, and expected to continue teaching," whereupon the principal called her attention to the rule that marriage terminated the employment of a teacher. The plaintiff also interviewed the city school superintendent in the afternoon of January 4th, and told him, "I expect to be married and expect to go on teaching," and he then "called attention to the by-law of the board." During the evening of January 4th, the plaintiff was married to O. R. Richards, and the next morning she presented herself at .the school building at the usual hour, with the avowed purpose of continuing her service as teacher. The principal of the school appeared with a substitute and informed plaintiff that "they had received word from Mr. Alderman [the city school superintendent] that I leave," and thereupon Maud L. Richards left. On January 6th the plaintiff filed with the clerk of the board a petition which recites that she had been summarily dismissed, and asks that "she may be rein-

stated to her former position.'' No charges were made against Maud L. Richards; no notice was given except as already detailed; no hearing was held; and no action was taken by the board, except as shown by the minutes of the meeting of January 21, 1915, where it is recorded that: "Mr. Alderman submitted the following: * * That the following vacancies have occurred in the various schools which should be filled, and reported that four teachers had been appointed subject to the approval of the board * * School of Trades for Girls, Maud L. Marsh, married 1—4—15. * * It was moved by Director Beach, and seconded by Director Plummer that the place of Maud L. Marsh, reported by Superintendent L. R. Alderman married January 4th, 1915, be declared vacant, and that the appointment of the following teachers be ratified,'' and the board ratified the appointment of a successor to plaintiff. A trial in the Circuit Court resulted in the allowance of a peremptory *mandamus* against the school board, commanding that the plaintiff be reinstated as a teacher and that her salary be paid "from the date when it should have been paid until such time as the said Maud L. Richards be reinstated to her former position.''

The defendants appealed.    AFFIRMED.

For appellant there was an oral argument by *Mr. Charles William Fulton,* with a brief over the name of *Messrs. Fulton & Bowerman* to this effect:

1. The position of a teacher is not an office, and *mandamus* will not lie to restore one to such a position: *Durham* v. *Monumental S. Min. Co.,* 9 Or. 41; *Habersham* v. *Sears,* 11 Or. 431 (5 Pac. 208, 50 Am. Rep. 481); *State ex rel.* v. *Smith,* 49 Neb. 755 (69 N. W. 114); *Coffin* v. *Board of Education,* 114 Mich.

342 (72 N. W. 156) ; *Jameson* v. *Board of Education,* 74 W. Va. 389 (81 S. E. 1126) ; Bailey, Habeas Corpus, etc., p. 1114.

2. The power to remove and discharge is conferred in general and unlimited terms by the statute (Laws 1913, c. 37, p. 69), and the district school board had power to make the marriage of a woman teacher a cause for dismissal: *Ewin* v. *Independent School Dist.,* 10 Idaho, 102 (77 Pac. 222) ; *Commonwealth ex rel.* v. *Board of Education,* 187 Pa. 70 (41 L. R. A. 498) ; *People ex rel.* v. *Maxwell,* 63 N. Y. Supp. 1098 (on appeal, 177 N. Y. 494, 69 N. E. 1092).

Even under statutes which prescribe the causes for which a teacher may be discharged, the school board may insert in the contract of employment other reasons that shall be grounds of discharge: *Olney School Dist.* v. *Christy,* 81 Ill. App. 304; *Dees* v. *Board of Education,* 109 N. W. 39; 35 Cyc. 1090. That was done in this case by express terms. It must be conceded that the board may refuse to employ married women as teachers, and it both logically and legally follows that it may stipulate in advance, when employing unmarried women teachers, that marriage shall terminate their employment.

3. There are many reasons why the policy adopted by the board is just and wise. In the lower court, however, counsel for petitioner pleaded that such policy casts a stigma on the marriage institution, and the court held it to be contrary to public policy. Of course neither contention is sound. It is no reflection on the state of matrimony. It is simply a recognition of the new and sacred duties which that state imposes, not only on the wife but as well on the husband. They have entered upon a new life. Both have assumed new and additional obligations and duties. It is reasonable to assume that these new and additional

duties and obligations will largely occupy and domi-
nate her mind, and divert her attention from the work
which formerly had her undivided attention. Prior to
this state her whole energies were directed to and em-
ployed in her school work. Now her mind must be
largely centered on her new duties and obligations.
She, far more than he, is affected by this *status,* so
far as concerns the pursuit of their former respective
callings. He must continue his efforts along previous
or other lines with renewed energy, because now he
must not only support himself but his wife as well.
She, on the contrary, must care for the home. Her in-
dependence, in a considerable degree at least, is sur-
rendered, and in a large measure she ceases to be a free-
agent, for her life has now become blended with that of
another, and hence her views, convictions and ideals
are become the composite result of this blending pro-
cess. Again, when a woman marries she rightfully
assumes that her husband will support her, and society
at large expects that of him. The unmarried women
who are compelled to work for their livelihood expect
that one in their ranks who marries will step aside
and make room for one who has no husband to sup-
port her. The unmarried woman worker resents, and
justly resents, the competition in her labor market of
a married woman whose husband is in health and
strength, and she has a right to assume that such is the
condition of a newly acquired husband. Why should
not, and why may not, a school board recognize these
conditions?

In the City of Portland there are over nine hundred
unmarried women teachers. At the end of the last
school year there were thirty-six vacancies to fill and
there were over three thousand unmarried women ap-
plicants. Does this speak for nothing on this ques-
tion of public policy? May not this vast army of

capable, earnest, intelligent young women, depending entirely on their own efforts for a living, be given a slight preference over the newly wedded husbands who are seeking positions for their wives to assist in their support, without invading some profound prin-- ciple of public policy in the administration of our government? When a man takes unto himself a wife, he agrees to support her. Most men insist on performing the contract to the letter. All should be compelled to do so. Speaking for our own profession, we do not hesitate to affirm that no member of it would for a moment contemplate the possibility of shirking that pleasing responsibility. Of course a case will occasionally arise, due to a husband's illness or misfortune, when a wife will be compelled to go out and labor for the support of both. Such cases, however, are exceptional, and rarely occur on the wedding day, and it is only with that day that we have to deal. We therefore beg to inquire what principle of profound public policy will be contravened by conducting public business on the assumption that every American gentleman intends to and will, for at least a reasonable period after marriage, support his wife?

For respondent there were oral arguments by *Mr. Oren R. Richards* and *Mr. Norman S. Richards,* with a brief over the names of *Messrs. Richards & Richards* and *Mr. Coy Burnett* to this effect:

I. *Mandamus* will lie to compel a school board to reinstate a teacher to a position from which she has been unlawfully removed: *Horne* v. *Chester School Dist.,* 75 N. H. 411 (75 Atl. 431); *Bogart* v. *Board of Education,* 106 App. Div. 56; *School Dist.* v. *Shuck,* 49 Colo. 526 (113 Pac. 511); *Barthel* v. *Board of Education,* 153 Cal. 376 (95 Pac. 892); *People ex rel.* v. *Board of Education,* 82 Misc. Rep. 684 (144 N. Y.

Supp. 87) ; *People ex rel.* v. *Board,* 43 Hun, 537; *Biggs* v. *McBride,* 17 Or. 640 (5 L. R. A. 115, 21 Pac. 878).

II.   Statutes *in pari materia* must be construed together: *Smith* v. *Kelly,* 24 Or. 464, 475 (33 Pac. 642, 645) ; *School Dist. No. 2* v. *Lambert,* 28 Or. 209 (42 Pac. 221) ; *Stoppenback* v. *Multnomah County,* 71 Or. 493 (142 Pac. 832, 837) ; 36 Cyc. 1151. The statutes which should be thus construed are these: Laws 1911, c. 58, §§ 3, 17, 20–22; Laws 1913, c. 37, §§ 4–8, 10, c. 172, §§ 17, 22, 23.

III.   The manner provided by statute for the dismissal of teachers and the revocation of their licenses is mandatory; the power of dismissal can be exercised only in the manner fixed by the statutes: *Barton* v. *School Dist.,* 77 Or. 30 (150 Pac. 251) ; *Paul* v. *School Dist.,* 28 Vt. 575; *Kennedy* v. *Board of Education,* 82 Cal. 483 (22 Pac. 1042) ; *Brown* v. *Owen,* 23 South. 35; *Murray* v. *City of La Grande,* 76 Or. 598 (149 Pac. 1019).

IV.   A by-law providing for the dismissal of teachers which is inconsistent with the provisions of the statutes upon the same subject is void: *People ex rel.* v. *Maxwell,* 177 N. Y. 494 (69 N. E. 1092) ; *People ex rel.* v. *Board of Education (Peixetto Case),* 82 Misc. Rep. 684 (144 N. Y. Supp. 87, 94) ; *Jameson* v. *Board of Education,* 74 W. Va. 389 (81 S. E. 1126, 1130) ; *Hall Moody Institute* v. *Copass* (Tenn.), 69 S. W. 327; *Barthel* v. *Board of Education,* 153 Cal. 376 (95 Pac. 892) ; *Fairchild* v. *Board of Education,* 107 Cal. 92 (40 Pac. 26) ; *Thompson* v. *Gibbs,* 97 Tenn. 489 (34 L. R. A. 548, 37 S. W. 277) ; *School Directors* v. *Wright,* 43 Ill. App. 270; *Goodyear* v. *School Dist.,* 17 Or. 517 (21 Pac. 664) ; *Baxter* v. *Davis,* 58 Or. 109 (112 Pac. 410) ; *Crawford* v. *School Dist.,* 68 Or. 388

(137 Pac. 217, Ann. Cas. 1915C, 522, 50 L. R. A. (N. S.) 147); 35 Cyc. 899, 901.

V.   The marriage of a teacher is not "good cause" for the dismissal under the laws of Oregon.   The rule of the board making marriage a ground of dismissal is void, since it is not "good cause" within the meaning of that term as used in Laws of 1913, Chapter 172, Section 22.   The authorities are undivided upon the meaning of this term in such a statute, and are to the effect that "good cause" is a personal disqualification of that particular person to perform the particular duties which are a part of the position in question. "Good cause" goes to the existing personal disqualification as distinguished from an apprehension that the person may become disqualified because that person is about to join a certain class of persons—as, that such person is about to become married, or to become a member of the Lady Maccabees, or a suffragette, or a Methodist, or Baptist: *State* v. *Common Council,* 53 Minn. 238 (39 Am. St. Rep. 595, 55 N. W. 118); *McCully* v. *State,* 102 Tenn. 509 (46 L. R. A. 567, 53 S. W. 134, 137); *State ex rel.* v. *Wallbridge,* 62 Mo. App. 162; *State ex rel.* v. *Wallbridge,* 69 Mo. App. 657, 669; *People ex rel.* v. *Mayor of New York,* 19 Hun, 441, 448; *People* v. *Thompson,* 94 N. Y. 451, 452; *Guden* v. *Dike,* 71 App. Div. 422 (75 N. Y. Supp. 794, 798); *Board of Street Commrs.* v. *Williams,* 96 Md. 232 (53 Atl. 923); *Haggerty* v. *Shedd,* 75 N. H. 393 (74 Atl. 1055).

VI.   The public policy of Oregon, as shown by the legislation through more than thirty years, is against the position taken by appellant.

We submit that the board cannot discharge the respondent on account of whim or caprice or prejudice, or on account of some archaic rule that has been

handed down to them from past ages by a prior school board, as was testified to by the school clerk. The people of the State of Oregon have in the past twenty years progressed in favor of the rights of women; they have granted to married women the right to hold school offices generally (Section 4116, L. O. L.); the right to vote; and in the Permanent Tenure Act have granted them a permanent right to teach in the public schools. The people of Oregon passed the Permanent Tenure Act to insure teachers of the permanency of their positions so long as they were efficient in the particular work allotted to them, and it is for two reasons, so that the teacher might feel secure in her position and so that the public school would obtain thereby a better class of teachers. The people of Portland are now employing in the schools married teachers, and admittedly they are good teachers, yet in the face of this they pick out one teacher and, because she marries, cast stigma and reproach upon the marriage relation by discharging such teacher. They thereby cast stigma upon a relation which is legalized by the state, and one in favor of which public policy is exercising every endeavor. They do this because they say that during the brief period of the honeymoon the teacher is not as proficient as she was before her marriage.

So far as suspension during a period when a teacher is not proficient, the law gives the board a right to suspend, but in no case gives a right to discharge. The reasons *pro* and *con* advanced upon the policy of the employment of married teachers would be appropriate if addressed to the law-making power, but they are of no concern to a school board, which is a creature of statute, and whose powers are defined and limited by statute. If the legislature had desired that mar-

riage should terminate a teacher's employment or work a revocation of her certificate, it could and would have made an appropriate provision on that subject. It is not to be presumed that the legislature intended to include in the grounds of dismissal one which the public policy of the state has generally favored.

Mr. Justice Harris delivered the opinion of the court.

In the final analysis the decision of this controversy depends upon whether the school board possesses the right to enforce a rule which provides that the marriage of a woman teacher automatically terminates her "service with the district." The question presented for determination necessarily involves a consideration of certain statutes, and for that reason it is proper first to direct attention to such legislative acts as may be applicable. In 1913 the legislature passed two measures, which became effective simultaneously on June 3, 1913. One act is known as Chapter 37 of the Laws of 1913, and the other is referred to as Chapter 172 of the Laws of 1913. The provisions of Chapter 37, so far as they may be of interest here, read thus:

"Section 1. The board of directors of every school district in this state now having or which at any time hereafter shall have a population of 20,000 or more persons shall have the power and authority to appoint and remove, hire and discharge all teachers, officers, agents and employees as it may deem necessary, and to fix their compensation. * *

"Sec. 3. The teachers employed in any such district or districts, during their first two years of service shall be classed as probationary teachers. * *

"Sec. 4. Teachers who have been employed in the schools in any such district or districts as regularly appointed teachers for not less than two successive

annual terms shall by the board of directors be placed upon the list of permanently employed teachers.

"Sec. 5.   Teachers so placed upon such list shall not be subject to annual appointment, but shall continue to serve until dismissed or discontinued in the service by the board in the manner herein provided, subject to the rules of the board concerning suspensions, but such rules shall be reasonable and for the good of such schools. * *

"Sec. 6.   Before being dismissed any teacher on the permanent list shall receive written notice, stating the reason for the proposed dismissal, together with a copy of any charges or complaints which may be filed against him or her, and upon written request filed with the clerk the teacher shall be entitled to and given a hearing before the board within ten days after said notice, with full benefit of witnesses and sub-poenas issued in blank by and over the hand of the clerk therefor and the right to be represented by counsel.   Of any such hearing such teacher and each member of the board shall have due notice not less than three days before the date set for the hearing, and such hearing may be continued from time to time on account of sickness or absence of material witnesses. * *

"Sec. 8.   All complaints and criticisms made against any teacher on such list shall be in writing and signed by the person preferring the same and filed with the clerk of such board, and the same may be inspected at any time during office hours by such teacher or any other person. * *

"Sec. 10.   All teachers who shall have been employed in such district or districts two or more years prior to the first day of July, 1913, shall be eligible to re-election as permanent teachers, and all such teachers who shall be re-elected for employment by the board for the school year beginning in September, 1913, shall be permanent teachers under the provisions of this act.

"Sec. 11.   All acts and parts of acts in conflict herewith are hereby repealed.   Provided, however, that

all general laws of this state relating to public schools shall be applicable to districts under this act except in so far as the same may be in conflict with the provisions hereof.''

Chapter 172 in detail enumerates the duties and powers of district school boards, and among ''the general duties of the district school boards of the State of Oregon'' it is prescribed by Section 1, subdivision 22, that:

''The board shall dismiss teachers only for good cause shown, and in case the board shall pass an order to dismiss, the material reason therefor shall be spread upon the record by the district clerk.''

The contention of the defendants proceeds upon the theory that Section 1 of Chapter 37 confers upon the board the unrestricted power to discharge teachers ''as it may deem necessary,'' while the argument of plaintiff is founded upon the claim that Section 1 must be read in connection with all the provisions of that chapter, as well as ''all general laws of this state relating to public schools,'' and that, when thus read, it will be ascertained that the power of the board to dismiss is limited to such causes as may be good or reasonable.

1. No attempt is made to decide whether the board is empowered to discontinue a position, and on that account terminate the service of a teacher; but, the discussion will be confined to a consideration of the single question presented by the facts, because here the plaintiff was dismissed by a rule which was designed to operate automatically the moment the plaintiff married. No formal charge was filed; no written notice was given; no copy of a complaint was received by plaintiff; and the position was filled by the appointment of another teacher. If Section 1 of

Chapter 37 stood alone, there would be ample reason to support the contention that the power to dismiss is unrestricted; but it does not stand by itself. The chapter provides for permanent tenures for teachers, clothes the board with power to dismiss teachers, and prescribes a procedure which must be followed when the board attempts to exercise its power of dismissal. When a teacher is "placed upon the list of permanently employed teachers," that teacher by force of the law shall continue to serve until dismissed in the manner provided for by Chapter 37 and "the manner herein provided" contemplates that there shall be a complaint, which must be in writing and filed with the clerk of the board, the teacher shall be given a written notice, stating the reason for the proposed dismissal, together with a copy of the complaint which has been filed, and if the teacher files a written request with the clerk, then the board must give the teacher a hearing within 10 days. It is true that the power to dismiss exists, but the power cannot be exercised unless the board observes the procedure pointed out by the very statute which confers the right to dismiss.

It is plain that the statute contemplates that the complaint or criticism or charge shall present some good cause or some reasonable cause for dismissal. If the board can dismiss for any cause, whether it be reasonable, capricious or whimsical, then a hearing would be an idle ceremony. Requiring a written complaint, making notice of the charge necessary, and providing for a hearing, all imply at least that the charge made and to be heard shall afford a reasonable cause for dismissal before the board can discharge a teacher, and the implication is emphasized when it is remembered that the main purpose of Chap-

ter 37 is to provide permanent tenures for teachers: *Guden* v. *Dike,* 71 App. Div. 422 (75 N. Y. Supp. 794).

The conclusion that the dismissal must be for some reasonable cause is still further strengthened by the terms of Section 5, which declares that teachers upon the permanent list shall continue to serve "until dismissed or discontinued in the service by the board in the manner herein provided, subject to the rules of the board concerning suspensions, but such rules shall be reasonable and for the good of such schools."

The meaning of the term "suspensions" may be doubtful. It may apply only to cases of temporary forced withdrawals, as where a teacher is temporarily relieved from service, or it may have a more comprehensive meaning and include, not only temporary releases, but also permanent dismissals. Whether the term be accorded the larger or the narrower meaning, the rules concerning such "suspensions" must be reasonable and for the good of the schools. If the rules mentioned in Section 5 include rules concerning dismissals, then we have the positive mandate of the law that such rules shall be reasonable; and, if the language of Section 5 is referable only to a temporary discontinuance of service, then the implication that the graver and more important act of dismissal must be founded upon some reasonable cause is made more manifest.

2. There is yet another statute which accentuates the conclusion that a teacher on the permanent list can only be discharged for some good or reasonable cause. Section 11 of Chapter 37 recites that:

"All general laws of this state relating to public schools shall be applicable to districts under this act except in so far as the same may be in conflict with the provisions hereof."

Subdivision 22 of Section 1, Chapter 172, Laws of 1913, is a general law relating to public schools, and by the terms of that law "the board shall dismiss teachers only for good cause shown." Assuming that subdivision 22 of Section 1 does not apply to the instant case, yet the general law affords protection, against unreasonable charges, to teachers who are not within the classes intended to be favored by Chapter 37, and the fact that both Chapters 37 and 172 were enacted by the same lawmakers only fortifies the view that Chapter 37 limits the right of the board to dismiss to the cases where reasonable cause is shown, and that the limitation attaches to the power to dismiss, either because of the express language found in Section 5, or if that section be given the narrower meaning, then the language of the act, when considered as a whole, gives expression to the limitation by necessary implication. If the right to dismiss cannot be exercised unless a good or reasonable cause is shown, it necessarily follows that the board is powerless to discharge for a cause which is not reasonable. Marriage either does or does not furnish a reasonable cause. If it is not a reasonable cause, then the board was utterly powerless to dismiss, because their authority is limited to the cases within the purview of the statute, and the law contemplates dismissal for reasonable cause only : *People ex rel. Murphy* v. *Maxwell,* 177 N. Y. 494 (69 N. E. 1092) ; *People ex rel.* v. *Board of Education,* 82 Misc. Rep. 684 (144 N. Y. Supp. 87) ; *Jameson* v. *Board of Education,* 74 W. Va. 389 (81 S. E. 1126) ; *Barthel* v. *Board of Education,* 153 Cal. 376 (95 Pac. 892) ; *Fairchild* v. *Board of Education,* 107 Cal. 92 (40 Pac. 26) ; *Kennedy* v. *Board of Education,* 82 Cal. 483 (22 Pac. 1042) ; *Thompson* v. *Gibbs,* 97 Tenn. 489 (37 S. W. 277, 34 L. R. A. 548). If the act of marriage is alone a reasonable cause, then the

attempted dismissal was ineffective because no written complaint was filed and the plaintiff was not furnished with a written notice, stating the reason for the proposed dismissal, and she did not receive a copy of any charge. The attempted dismissal was void in any event. If marriage is not a reasonable cause, the dismissal was ineffective, because the board was without any power to discharge for an unreasonable cause; if marriage is a good cause, the summary act of the board was of no effect because the power to dismiss was not exercised in the manner provided by law.

3. It is argued, however, that the notice received by plaintiff and signed by her on or about May 19, 1913, constituted a contract which bound the teacher to abide by the rule concerning marriage. The writing purports to cover the "ensuing school year," which commenced on September 15, 1913. No contract was signed upon the expiration of the "ensuing school year," and, in the absence of Chapter 37, a continuance of service might be presumed to be governed by the terms of the contract made in 1913. The writing, however, purports to cover the "ensuing school year," which commenced on September 15, 1913, and even though it be assumed that her service during "the ensuing school year" was governed exclusively by the terms of the contract made in 1913, unmodified by the provisions of Chapter 37, which became a governing law on June 3, 1913, that assumption cannot be continued and made applicable to her service on January 4, 1915, because at that time the "ensuing school year" had expired and the plaintiff occupied the position of teacher by virtue of the express terms of a statute. The relation had been created by and existed because of a law which had been enacted for that purpose.

Conceding that the contract signed in May, 1913, was valid when signed, still a stipulation making marriage a cause for peremptory dismissal would not be binding where the contract was made after June 3, 1913, when Chapter 37 became a law.   The board cannot dismiss at all for an unreasonable cause, and can dismiss for a reasonable cause only in the manner provided by Chapter 37.   Keeping in mind the purpose for which the statute was enacted, the board cannot, by contract, enlarge a power which is limited and restricted by the very law that creates the power.   The board cannot do indirectly that which it is prohibited from doing directly.   An apt illustration of this rule appears in *Thompson* v. *Gibbs,* 97 Tenn. 489 (37 S. W. 277, 34 L. R. A. 548).   The school authorities cannot "accomplish by indirection that upon which the statute had placed its ban": *Fairchild* v. *Board of Education,* 107 Cal. 92 (40 Pac. 26).   See, also, *People ex rel.* v. *Board of Education,* 82 Misc. Rep. 684 (144 N. Y. Supp. 87, 94).

The views herein expressed might be sufficient to dispose of the instant case, but we prefer to proceed with the inquiry and determine whether the single fact of marriage can, in advance and alone, be said to be a reasonable cause for dismissal, keeping in mind all the while that the purpose of Chapter 37 is to provide permanent tenures for teachers.   Efficiency and competency of teachers and the welfare of the schools are of course consummations "devoutly to be wished."   If a teacher becomes inefficient or fails to perform a duty, or does some act which of itself impairs usefulness, then a good or reasonable cause for dismissal would exist.   The act of marriage, however, does not, of itself, furnish a reasonable cause.   That the marriage *status* does not necessarily impair the competency of all

women teachers is conceded by the school authorities when they employ married women, as they are even now doing, to teach in the schools of this district.  The clerk of the board admitted that in some instances a woman becomes a better teacher after marriage than she was before.  The reason advanced for the rule adopted by the board is that after marriage a woman may devote her time and attention to her home rather than to her school work.  It would be just as reasonable to adopt a rule that if a woman teacher joined a church it would work an automatic dismissal from the schools on an imagined assumption that the church might engross her time, thought, and attention to the detriment of the schools; but such a regulation as the one supposed would not even have the semblance of reason.  It must be conceded that quite a different case is presented where the act ruled against is inherently wrong.  The act to which the instant rule relates does not involve a single element of wrong, but, on the contrary, marriage is not only protected by both the written and unwritten law, but it is also fostered by a sound public policy.  It is impossible to know in advance whether the efficiency of any person will become impaired because of marriage, and a rule which assumes that all persons do become less competent because of marriage is unreasonable because such a regulation is purely arbitrary.  If a teacher is just as competent and efficient after marriage, a dismissal because of marriage would be capricious.  If a teacher is neglectful, incompetent and inefficient, she ought to be discharged whether she is married or whether she is single.  Instructive discussions of the principles involved herein may be found in *State ex rel.* v. *Common Council,* 53 Minn. 228 (55 N. W. 118, 39 Am. St. Rep. 595); *McCully* v. *State,* 102 Tenn. 509 (53 S. W. 134,

46 L. R. A. 567); *People ex rel.* v. *Mayor,* 19 Hun
(N. Y.), 443; *People ex rel.* v. *Thompson,* 94 N. Y. 451;
*Guden* v. *Dike,* 71 App. Div. 422 (75 N. Y. Supp. 794);
*Board of Street Commrs.* v. *Williams,* 96 Md. 232 (53
Atl. 923). See, also, *Biggs* v. *McBride,* 17 Or. 640 (21
Pac. 878, 5 L. R. A. 115).

5. Since the mere fact of marriage is not alone suffi-
cient to warrant the discharge of a teacher, *mandamus*
is available as a remedy: *People ex rel.* v. *Board of
Education,* 82 Misc. Rep. 684 (144 N. Y. Supp. 87);
Id., 160 App. Div. 557 (145 N. Y. Supp. 853); *Kennedy*
v. *Board of Education,* 82 Cal. 483 (22 Pac. 1042);
*State ex rel.* v. *Board of Education,* 18 N. M. 183 (135
Pac. 96, 49 L. R. A. (N. S.) 62).

Some complaint is made of the form of denial ap-
pearing in the reply. While the form is not ideal, yet
the denial in the instant case is not like the pleading in
*Kabat* v. *Moore,* 48 Or. 195 (85 Pac. 506), but bears
more of a resemblance to the pleading which was ap-
proved in *Harrison* v. *Birrell,* 58 Or. 410 (115 Pac. 141).

The judgment of the Circuit Court was correct, and
it is affirmed.  AFFIRMED.