<hr />

THE STATE, EX REL. MANNING, *v.* MAYNF

| 68 | 285 |
| o158 | 264 |

STATE PRISON NORTH.—*Regulation and Government of.*—*Statute Construed.* Section 13 of the act of March 5th, 1859, 1 G. & H. 470, providing "for the erection of a new prison north of the national road," etc., continues in force the laws and regulations of the old prison as to all such necessary officers of the new prison as warden, clerk and others, for the management of such new prison, and the laws and regulations thus referred to are the

provisions of the act of February 5th, 1857, 1 R. S. 1876, p. 644, as far as the same can be made applicable.

SAME.—*Cause for which Warden may be Removed.—Board of Directors.*—Under section 4 of said act of 1857, the warden is elected by the directors for the term of four years, and can not be removed sooner except for a legal cause, amounting to malfeasance in office, or showing that such warden has not, in some particular, faithfully discharged his duties, and this cause must be founded upon some matter over which the law has given the board of directors the power to control the acts of the warden.

SAME.—*Duration of Term of Office of Deputy Warden and Guards.*—The deputy-warden and the guards of the prison are the appointees of the warden ; and as the law has not declared the duration of their offices, under section 2 of article 15 of the constitution of this State, they hold their respective offices during the pleasure of the warden ; and the failure of the warden to comply with an order of the board of directors demanding the discharge of such deputy-warden and guards, is not a sufficient cause for his removal, as such board is not authorized by law to make such order.

From the Laporte Circuit Court.

*B. Harrison*, *C. C. Hines*, *W. H. H. Miller*, *W. H. Calkins* and *D. J. Wile*, for appellant.

*C. Baker*, *O. B. Hord*, *A. W. Hendricks*, *J. Bradley* and *J. H. Bradley*, for appellee.

HOWK, C. J.—This was an information, in the nature of a *quo warranto*, by the appellant's relator against the appellee. In the information, the relator alleged, in substance, that, on the 11th day of March, 1875, the appellee, Charles Mayne, had been appointed and chosen by the then board of directors, or board of control, of the Northern Indiana State Prison, to the office of warden of said prison, for and during the term of four years thereafter, in accordance with the law in such cases made and provided ; that afterward, on the 14th day of July, 1877, the then board of directors of said prison, being then in session at said prison, removed the said Charles Mayne from his said office of warden of said prison " for cause," which cause was entered on the journal of said prison, such removal to take effect on the 19th day of July, 1877 ; that the appel-

lant's relator, Charles A. Manning, on said 14th day of July, 1877, was appointed and chosen by said board of directors to be the warden of said prison, as the successor of said Charles Mayne, removed, and to take effect also on said 19th day of July, 1877; that on that day the said relator filed his bond in the penalty and with the sureties required by law, which bond was then approved by said board of directors, and filed in the office of the Treasurer of State; that, before filing his bond, the relator was duly qualified, and took and subscribed an official oath for the faithful and impartial discharge of his duties, as warden of said prison; that, after taking such oath and filing said bond, the appellant's relator, on said 19th day of July, 1877, demanded the possession of the said office of warden of said prison, of and from the said Charles Mayne, which was then and there refused by said Mayne, and the said relator was then and there excluded from said office, and was still refused admission into said office, and excluded from the exercise of the functions thereof; and that the said Charles Mayne, on said last named day and since hitherto, had usurped, intruded into, and unlawfully held the said office of warden of said prison, and exercised the functions thereof. Wherefore, etc.

To the relator's information, the appellee answered by a general denial thereof. The cause was tried by the court, and a finding was made for the appellee. The relator's motion for a new trial was overruled, and to this ruling he excepted, and the court rendered judgment against the relator for the appellee's costs.

The only error assigned by the appellant's relator in this court is the decision of the circuit court in overruling his motion for a new trial, and the only causes for such new trial, specified in the motion therefor, were, that the finding of the court was not sustained by sufficient evidence, and that it was contrary to law.

It is manifest, therefore, that the questions for the decision of this court all arise and are dependent upon the case made by the evidence. The cause was submitted to the circuit court for trial, and it comes before this court for our decision, upon an agreed statement of facts. It is necessary, we think, to a clear presentation of the case made by the record, and to a proper understanding of the points decided, that we should give a summary, at least, of the facts agreed upon, and this we will do as briefly as we can.

It was agreed by and between the parties, that the court might and should determine " the title to the office in dispute," exclusively from the statement of the facts agreed upon. On the 11th day of March, 1875, the board of directors of the Indiana State Prison North elected the appellee, Charles Mayne, " warden of said prison for the term of four years thereafter, in pursuance of the statute in such case made and provided," and he then gave bond and took the oath of office, as required by law, and had since been and still was acting as the warden of said prison. On the 6th day of May, 1875, by and with the advice and consent of the said board of directors, the said Mayne appointed one Amos C. Hall the deputy-warden of said prison, who then gave bond, and took the oath of office, in conformity with law. On the 8th of April, 1875, one R. M. Yontz, on the 12th day of May, 1875, one C. C. Dickey, and on the 4th of June, 1875, James Rogers and Charles Young were severally appointed by said Mayne, by and with the advice and consent of the then board of directors of said prison, assistants to said warden, and all said appointees, including said Hall, had been since their appointment and then were acting as such officers.

At the regular session of the General Assembly of this State, in 1877, a new board of three directors of said prison was duly elected, and on the 12th day of March, 1877, the

said directors duly qualified and entered upon the discharge of their duties, and thence hitherto had been and still were acting as such officers. On the 19th day of May, 1877, the said board of directors, being then in session at said prison, made and passed the following order, namely : " The board of control, otherwise named directors, hereby direct the warden, Charles Mayne, to remove the present deputy-warden, Amos C. Hall , the removal to take effect as soon as the 7th of June next; the board believing such removal necessary for the welfare of the prison."

On the 7th day of June, 1877, the said board of directors, being then in session at said prison, made and passed the following order, namely: " The board of directors do not consent to the continuation of Amos C. Hall, as deputy-warden, and the said Amos C. Hall is hereby notified to remove his family from the prison-house occupied by them, and the warden is hereby directed to see that this order is carried out without delay."

Also, the following order, to wit: " The following guards are hereby dismissed, and will not hereafter be recognized by the board as officers of this institution, on account of unfitness for the service, and the warden is hereby directed to see that this order is executed. The following are the names of such guards :" (Here followed the names. above set out, of the four assistants to the warden) ; " and, in lieu thereof, the board nominates " four other named persons. Each of the said orders was entered upon the records of said prison, at the dates of their passage, of which the said warden had due notice.

After the passage of the said first order, and notice thereof to said Charles Mayne, he applied to the Attorney General of this State, without the knowledge of the board of directors, and obtained from him his legal opinion, in relation to the power of the board of directors to remove the deputy-warden, without the consent of the warden of

said prison, a copy of which opinion was made a part of the agreed statement of facts.

On the 14th day of July, 1877, the said Charles Mayne filed with the board of directors of said prison his answer in writing to the orders of the board, above set out, in relation to the deputy-warden and his family, and to the four guards, or assistants of the warden, whom the board had summarily dismissed; in which answer, he respectfully declined to make the removals and changes indicated in the said orders of the board, for the following reasons :

1st.    The board had no authority given it by law to make such orders; and,

2d.    The public service would be greatly injured and the government of the prison demoralized thereby.

A copy of this written answer was also made a part of the agreed statement of facts.

On the said 14th day of July, 1877, the said board of directors, being then in session, made and passed an order for the removal of said Charles Mayne from, and for the appointment of the said Charles A. Manning to, the said office of warden of the said Northern Indiana State Prison, which said order was read by the said Mayne, before action was taken thereon; and, being called upon by the board to answer, the said Mayne then said that he had no other reasons to give for his refusal to carry out the said orders of the board than those he had already given in his aforesaid written answer; and thereupon the said orders for the removal of the said Mayne from the said office of warden of the said prison, and for the appointment of the said Manning to the same office, as the successor of the said Mayne, removed, were signed by the president, and attested by the clerk, of said board of directors, in the presence of said Charles Mayne; such removal to take effect on the 19th day of July, 1877.

On the 7th day of June, 1877, the deputy-warden, Amos C. Hall, and his family were occupying the dwelling-house, owned by the State, within the prison walls, and using the same as a boarding-house, at which certain of the guards, contractors' employees, and other officers and persons about the prison were boarding, and that the said Hall, with said Mayne's consent, received and applied to his own use all gains and profits arising therefrom, and no part of such gains and profits went to the benefit of the State; that, during all the time since the prison had been occupied as such, it had been the custom there for the deputy-warden, with the consent of the board of directors and warden, to keep a boarding-house for the purpose of boarding the guards and other employees, who were required to be constantly at the prison, and apply the gains and profits to his own use and benefit; and that the house occupied by said Hall was erected by the State for the purpose of a boarding-house. Before the making of said order of June 7th, 1877, the said Mayne had several times suggested to said board of directors, that if they would make an order, requiring the boarding-house to be conducted in the interest of the State, he would have the order carried out, but they declined to do so.

On the 19th day of July, 1877, the said Charles A. Manning, having given bond to the approval of said board of directors, and having taken an official oath, as such warden, as required by law, demanded the possession of the office of warden of said prison, of and from the said Charles Mayne, which was then and there refused by said Mayne, and he, the said Manning, was then and there, and had ever since been, excluded from the said office of warden and from exercising the functions thereof, and the said Charles Mayne had, since said demand, continued as before in the possession of said office of warden, and was then as before exercising and performing the duties and functions of warden of said prison.

The rules adopted by the board of directors of said prison, and all amendments thereto, so far as they related to the warden and deputy-warden, were also made part of the agreed statement of facts; but the only part of said rules, on which the board of directors would seem to have acted, is the following extract therefrom, to wit:

"Rule 2. WARDEN's DUTIES. It shall be his duty to obey and carry out all written instructions that he may receive from the directors," etc.

The above extract from said Rule 2 was quoted by the board of directors in their final order for the removal of said Charles Mayne, and is the only quotation from, or reference to, any of the rules of the prison, in any of the orders of said board.

We have now given the substance of all the facts contained in the agreed statement thereof, upon which this cause was submitted to the court to determine "the title to the office in dispute." In the conclusion of their agreed statement of facts, the parties say: "This question is presented in good faith to try the right to said office; and no question is to be presented or tried, but the power of the board to remove the old warden in the manner and for the causes herein set forth, and appoint a new one." We proceed now to the consideration and decision of the question thus presented.

The Northern Indiana State Prison was erected under the provisions of an act entitled "An act to provide for the erection of a new prison north of the National Road, election of officers therefor, making appropriations, and for the regulation of the same," approved March 5th, 1859. Acts 1859, p. 135; 1 G. & H., p. 470. For the most part, the provisions of this act had reference only to the location and construction of the new prison; but, in section 13 of said act, it was provided as follows:

"SEC. 13. All laws and regulations in force in refer-

ence to the government of the convicts, officers, and other matters in the present state-prison, be continued in force in reference to the management and control of this prison, as far as the same can be made applicable."

Of this section, in the case of *Manson* v. *The State, ex rel. Lee*, 66 Ind. 78, it was said by this court: "The true intent and meaning of said section 13, as we construe its provisions, were, that the laws and regulations of the old prison should be continued in force, as to all such necessary officers of the new prison, such as warden, clerk and others, for the management and control of the new prison, as were not mentioned in the act providing for the erection thereof."

The laws and regulations of the old prison, referred to in said section 13, and thereby " continued in force in reference to the management and control" of the Indiana State Prison North, as far as the same could be made applicable, were the provisions and regulations found and contained in the act entitled "An act to provide for the government and discipline of the state-prison, and to repeal 'An act to provide for the government and discipline of the state-prison,' approved March 3d, 1855, and all other laws or parts of laws inconsistent herewith," approved February 5th, 1857. Acts 1857, p. 103; 1 R. S. 1876, p. 644. In this act, it is provided, *inter alia*, that the warden of the prison " shall have charge of the whole operations of the institution, and shall be its executive officer;" that " the warden, by and with the advice and consent of the directors, shall have the power to appoint a deputy-warden, clerk, and such number of assistant keepers as the directors may deem necessary," and " all the officers shall hold their respective offices until their successors shall have been elected, [or] appointed and qualified;" and that " rules for the government and discipline of the prison shall be enacted by the directors and

warden, * * * * and the warden, for himself and assistants, shall be responsible for the observance and enforcement of such rules and regulations." In Rule 2 of the rules adopted by the board of directors of the Northern Prison, prescribing the "warden's duties," it was also provided that the warden "shall be held responsible for the manner in which the prison is managed and conducted."

In the first sentence of section 4 of the above entitled act of February 5th, 1857, it is provided that "The directors shall elect a warden, who shall hold his office for the term of four years unless sooner removed by the directors for cause, which cause shall be entered upon the journal of the institution." 1 R. S. 1876, p. 645. The appellee, Charles Mayne, was duly elected by the board of directors, and gave bond and qualified according to law, as the warden of the Northern Prison, for the term of four years from and after the 11th day of March, 1875. When only one-half of his term of office had expired, to wit, on the 12th day of March, 1877, an entirely new board of directors of said prison, who had been elected as such at the last previous session of the General Assembly, came into office and entered upon the discharge of their official duties. Afterward, on the 17th day of July, 1877, when the new board of directors attempted to remove the said Charles Mayne from the said office of warden of said prison, and to appoint, as his successor in said office, the appellant's relator, Charles A. Manning, he, the said Mayne, had nearly twenty months yet to serve of his said term of office as such warden of said prison.

This brings us to the question, which may well be regarded as the controlling question, in the case now before us: Had the board of directors the power, under the law, to remove Charles Mayne from the office of warden of the northern prison, in the manner and for the supposed cause or causes stated and set forth in the order of the board for

his removal ? The statute provides, as we have seen, that the warden " shall hold his office for the term of four years unless sooner removed by the directors for cause." It can hardly be claimed, we suppose, that the directors of the prison would have the power, under this provision of the statute, to remove the warden from his office before the expiration of his term, for any cause other than a legal cause. The cause must be one amounting to malfeasance in office, or showing that he has not, in some particular, faithfully and impartially discharged his duties as warden ; and certainly, as it seems to us, the cause for removal must be founded on some matter or thing done, or omitted to be done, by the warden, in reference to which the law has given the directors the right and power to supervise, control and enforce the acts of the warden.

It is claimed, in argument, by some of the relator's counsel, as we understand them, that the statute quoted has made the board of directors the sole and absolute judges, not only of the existence, but also of the sufficiency, of the actual or imaginary cause for the removal of the warden ; and that the removal of the warden by the directors, for an alleged cause declared by them to exist and be sufficient, whether such cause were true or false, valid or invalid, or just or unjust, would be final and conclusive, and the warden would be thereby bound, without remedy or redress. We are not inclined to adopt any such view of the statute.

From the orders of the board of directors, heretofore set out in this opinion, it is evident, we think, that the order for the removal of the appellee, Mayne, from the office of warden of the prison, was founded upon his failure and refusal to remove the deputy-warden from his office, to remove the family of the deputy-warden from the boarding-house of the prison, and to discharge four of the warden's assistants or guards, and fill their places with the ap-

pointees of the directors, as required by their orders. We are clearly of the opinion that the board of directors were not authorized by law to make either of the aforesaid orders, and that, for this reason, they could neither compel the warden, Mayne, to comply with said orders, nor remove him from office for his non-compliance therewith. It was an agreed fact that the deputy-warden and the four assistants or guards had all been duly appointed by the warden to their respective offices, " by and with the advice and consent of the directors" of the prison. Neither the deputy-warden, nor a warden's assistant or guard, would hold his office for any fixed term or period of time. By the last sentence of section 16 of the aforesaid act of February 5th, 1857, it is provided that " All the officers shall hold their respective offices until their successors shall have been elected, [or] appointed and qualified ;" but the statute has nowhere declared the duration of these offices, nor limited them to any fixed term. In such a case, it is provided in section 2, of article 15, of the constitution of this State, that " such office shall be held during the pleasure of the authority making the appointment." The deputy-warden and the guards of the prison were the appointees of the warden ; the law had not declared the duration of their offices, and therefore it follows that, under the constitutional provision quoted, they would hold their respective offices " during the pleasure " of the warden. It is just and right, as it seems to us, that these subordinate officers of the prison should hold their offices during the pleasure of the warden ; for, under the statute and by the rules of the prison, the warden was made and held responsible for the assistants, for their observance and enforcement of the prison rules and regulations, and for the manner in which the prison was managed and conducted.

We are of the opinion that the directors of the prison, in their aforementioned orders in relation to the deputy-

warden and guards of the prison, transcended their powers and invaded and attempted to usurp the powers of the warden, and that the order made for the removal of the deputy-warden's family from the prison boarding-house, in so far as it related to or affected the warden, was intended to coerce the warden to remove from office the deputy-warden. The board of directors were not authorized by law to make any of these orders; and, therefore, we think that the failure or refusal of the warden to comply with or carry out these orders, or any of them, did not constitute a " cause," within the meaning of the statute, for or on account of which he might be removed by the directors from his said office. The order of the directors, removing the appellee, Charles Mayne, from the office of warden of the Northern Prison, was illegal and void, in our opinion, and created no vacancy; and it follows, therefore, that the election or appointment of the appellant's relator, Charles A. Manning, to the said office of warden, was not authorized by law, as there was no legal vacancy then existing in said office.

For the reason given, we think that the court committed no error in overruling the relator's motion for a new trial.

The judgment is affirmed, at the costs of the appellant's relator.